**In re the Marriage of Karen A. FINK, Petitioner, Respondent,**

v.

**Laurence E. FINK, Appellant.**

**No. C1–84–1859.**

Court of Appeals of Minnesota.

April 16, 1985.

Joel A. Theisen, Ramstad, Theisen & Kennedy, Eagan, for respondent.

Harvey N. Jones, Kathy A. Endres, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, Hastings, for appellant.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Appellant appeals from the spousal maintenance award in a marital dissolution action. Appellant contends that the trial court abused its discretion by awarding maintenance or, alternatively, in setting the amount and duration of such maintenance award. We affirm.

## FACTS

Appellant, Laurence E. Fink, and respondent, Karen E. Fink, were married on May 31, 1958. Both were 47 years of age as of the dissolution date. During their 26 year marriage, they had two children both of whom were emancipated as of the judgment date.

Respondent Karen Fink has a high school education and received some additional vocational training as a telephone operator. This additional training is no longer useful, however, since the telephone system she trained on is currently not in use. During the marriage, Karen intermittently held several full and part-time clerical jobs. Her primary occupation while her children were growing up, however, was being a housewife. The I.R.S. now employs her as a secretary for $5.30 per hour. Her monthly take-home pay is approximately $620. Karen estimates her monthly expenses to be $1,158.

Laurence Fink received his post high school education at Dunwoody Institute and is employed as an electrician by People's Electric Company in St. Paul at an hourly rate of $16.55 plus 9.5% vacation and holiday pay. Just prior to initiation of the dissolution proceedings, Laurence claimed three withholding allowances on his form W–4 and received a monthly take-home pay of approximately $1,806. During the pendency of the proceedings, Laurence apparently amended his W–4 to one withholding allowance and is claiming that his monthly take-home pay is now $1,593. The record below does not address which figure more accurately reflects his ultimate income net of taxes. Laurence did testify that his income varies considerably based upon the amount of overtime he works, and that his gross annual salaries for 1981, 1982 and 1983 were approximately $33,673, $45,530 and $36,003, respectively. His corresponding monthly expenses, excluding spousal maintenance, were estimated at oral argument to be $971.

The parties do not dispute the trial court's division of property. Both parties agree that the division was substantially equal. Under the court's order, Karen received liquid assets of approximately $67,500, $21,000 of which she invested as a down payment on a townhouse. The trial court allowed each spouse to retain whatever personal property they possessed as of the judgment date. It further ordered Laurence to pay Karen, as maintenance, $600 per month for 18 months and $300 per month for an additional 42 months.

## ISSUE

Did the trial court err in setting the amount or duration of spousal maintenance?

## ANALYSIS

A trial court's determination of the amount and duration of spousal maintenance is final unless the court abused the discretion accorded to it. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). On review, the trial court's discretion must be examined in light of Minn.Stat. § 518.-552 (1982). Furthermore, each case must be decided on its own facts, and no single statutory factor or consideration for determining the amount and duration of spousal maintenance is dispositive. *Erlandson*, 318 N.W.2d at 39.

Minn.Stat. § 518.552, subd. 1 (1982) authorizes a trial court to award spousal maintenance if it finds that two criteria are satisfied—i.e., that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1982). Minn. Stat. § 518.552, subd. 2 sets forth the factors to be taken into consideration by the trial court in determining the content and duration of the maintenance award. When applying these factors, a court must balance the financial needs of Karen and her ability to meet those needs against the financial condition of Laurence. *Erlandson*, 318 N.W.2d at 39–40.

At trial, Karen estimated her monthly expenses to be $1,158. Laurence did not challenge this figure. Karen's take-home pay is approximately $620 per month. Despite this apparent demonstration of need, Laurence asserts that the trial court failed to consider certain relevant factors.

Laurence first contends that the trial court ignored the investment income that Karen will earn from the liquid assets she received in the property distribution. Minn.Stat. § 518.552, subd. 2(a) requires the courts to consider financial resources, which include income generated by liquid assets. *Broms v. Broms*, 353 N.W.2d 135 (Minn.1984). *See Erlandson*, 318 N.W.2d at 38. Courts normally do not expect spouses to invade the principal of their investments to satisfy their monthly financial needs. *See, e.g., Broms*, 137 N.W.2d at 137–8.

Karen received $67,500 in liquid assets as part of her property settlement.

Following her downpayment of $21,000 for a townhouse, she had approximately $46,-500 to invest. At 8% per annum, such investment would yield approximately $310 per month. Respondent agreed at oral argument that 8% was not an unrealistically high estimated return.

Consideration of this income does not establish that the trial court abused its discretion. Trial courts are authorized to look beyond the bare needs of the spouse seeking maintenance. Courts should also consider the duration of the marriage, the standard of living established during the marriage, and the likelihood the spouse seeking maintenance will have to acquire additional training to enable her to find appropriate employment to provide for her future. *See* Minn.Stat. § 518.552, subd. 2. Karen re-entered the job market full-time as a secretary only after the dissolution of her marriage appeared imminent. Her position at the I.R.S. appears to offer possible advancement, but the likelihood of rapid advancement is slim. To achieve the same or reasonably similar standard of living she had while she was married, she requires additional training.

Laurence also contends that the size and duration of the award would unduly burden him. Laurence estimates his monthly expenses *including* maintenance to be $1,571. His monthly net income is more ambiguous in the record. The trial court made no specific findings in this matter. If one withholding allowance approximated his tax liability, it appears his net income would be $1,593. If, on the other hand, three withholding allowances approximated his tax liability, then monthly net income would be approximately $1,806. In either case, his net income exceeds his estimated monthly expenses including maintenance. Thus the record supports the trial court's conclusion that the amount of the maintenance award does not place an undue burden on Laurence.

Laurence also challenges the duration of the award. The period over which maintenance is awarded must bear a reasonable relationship to its underlying ba-

sis—to augment the income of the spouse seeking maintenance in order to meet her reasonable financial needs. *Otis v. Otis,* 299 N.W.2d 114 (Minn.1980). Given the likelihood of further education and Karen's comparatively limited earnings potential, the duration of 60 months likewise is not an abuse of discretion.

The award of maintenance of $600 per month for 18 months and $300 per month for a remaining 42 months, although generous, does not constitute an abuse of discretion. The trial court might, alternatively, have made a disproportionate property settlement in Karen's favor so that her support would have come more substantially from investment income. This, in turn, may potentially create less cash flow problems for Laurence. However, our province as a reviewing court is not to second guess the wisdom of the trial court's decision provided that such decision does not constitute an abuse of its wide discretion.

## DECISION

The trial court did not abuse its broad discretion when it considered the length of the marriage, the standard of living established during the marriage and the need of a spouse for additional training to enable her to find appropriate employment or otherwise to improve her employment status.

Affirmed.