**In re the Marriage of Daniel A. NAPIER, Petitioner, Appellant,**

v.

**Barbara D. NAPIER, Respondent.**

**No. C9–85–355.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Richard C. Mollin, Jr., International Falls, for appellant.

Jerome W. Shermoen, International Falls, for respondent.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

The trial court in this dissolution action awarded respondent Barbara Napier maintenance of $1,250 per month for a period of ten years. While the trial court characterized its award as "permanent," it specifically reserved jurisdiction in order to fully review the award at the end of the ten-year period. It also ordered appellant Daniel Napier to pay $540.50 per month as child support for the parties' minor child Sarah, who is in her mother's custody, and ordered Barbara Napier to pay $265.00 per month as child support for the parties' minor child Mathew, who is in his father's custody. Daniel Napier appeals, challenging both the duration and the amount of the maintenance award.

## FACTS

The parties were married September 4, 1965. At the time of the dissolution, appellant Daniel Napier was 43 years old, and respondent Barbara Napier was 41 years old. They have two children, Mathew, born in 1968, and Sarah, born in 1972. At trial, the parties stipulated that appellant would retain custody of Mathew, and that respondent would retain custody of Sarah, with liberal visitation rights accorded each party. They also stipulated that the marital assets would be divided equally between the parties.

Appellant has been employed for the past three years by Boise-Cascade in International Falls, Minnesota, as a communications manager, and currently earns an annual salary of $53,000. He has been employed full-time throughout the years of the marriage, and has no plans to leave his present employment.

Respondent has had only sporadic employment, primarily part-time, during the parties' marriage. While she has a B.S. degree in home-economics and fashion merchandising, she has not held jobs using those skills. Most recently, she worked part-time selling advertising for a newspaper, at a wage of $6.00 per hour. Throughout the marriage, respondent's primary contribution has been as a homemaker and caretaker for the parties' two children, and she has followed her husband as his career has led to transfers and job changes. Respondent has not been employed since the family moved to Minnesota in 1982.

When dissolution proceedings commenced, respondent began seeking employment but was unsuccessful. This was at least partially due to the depressed economic situation in the International Falls region. At the time of this appeal, respondent has moved from Minnesota to the St. Louis, Missouri area, to live near relatives and to seek employment. It is expected that she will eventually become employed, but her difficulty in obtaining gainful employment may continue for some time, and she will probably never achieve the salary level that she might have had if she had been working full-time during the nineteen years she was married to appellant.

From the evidence presented at trial, it appears that respondent's living expenses approximate $1,200 per month. The trial court awarded her maintenance, based on approximately 30% of appellant's monthly pay (after social security tax deductions) of $4,250. This resulted in an award of $1,250 per month.

The trial court called its award "permanent" maintenance, but reserved jurisdiction to fully review the situation at the end of ten years. In its memorandum accompanying the judgment, the trial court stated its hope that the maintenance award would be terminated at that time, depending on respondent's needs and on her efforts to obtain employment.

Each party has custody of one of their two minor children. The trial court concluded that each party had an obligation toward support of both children. Appellant was ordered to pay $540.50 as child support. The court concluded this obligation should be offset by $265 per month that respondent should contribute for the support of the child cared for by appellant. The court's order results in a net monthly gain to respondent from appellant of

$275.50, in addition to the maintenance award.

## ISSUES

1. Did the trial court abuse its discretion when it awarded maintenance to respondent for a ten-year period?

2. Did the trial court abuse its discretion when it awarded maintenance in the amount of $1,250 per month?

## ANALYSIS

■■■ 1. In dissolution cases, the trial court has broad discretion in deciding whether to award maintenance and in determining the duration and amount of maintenance. The trial court's determination must be affirmed unless the court abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982); *McGowan v. McGowan*, 363 N.W.2d 359, 360 (Minn.Ct.App.1985). Before this court will find that the trial court abused its discretion, there must be a clearly erroneous conclusion that is against logic and the facts on record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984); *Swanstrom v. Swanstrom*, 359 N.W.2d 634, 636 (Minn.Ct. App.1984). The trial court's decision must be examined in light of the factors enumerated in Minn.Stat. § 518.552 (1984). *Erlandson* at 38; *Fink v. Fink*, 366 N.W.2d 340, 341 (Minn.Ct.App.1985); *McGowan* at 360. Furthermore, each case must be determined on its own facts, and no single statutory factor for determining the type or amount of maintenance is dispositive. *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn.1984); *Erlandson* at 39; *Fink* at 341; *McGowan* at 360.

A court may grant maintenance where the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment * * *.

Minn.Stat. § 518.552, subd. 1 (1984). Subdivision 2 of the section specifies seven factors to be considered, each having to do with resources and needs.

■■■ The 7-factor list is not exclusive, however, as the statute requires consideration of "all relevant factors," including the seven listed in subdivision 2. Thus, the basic issue is the financial needs of the spouse receiving maintenance and the ability to meet these needs, balanced against the financial condition of the spouse providing maintenance. *Erlandson* at 39–40; *Wiltsey v. Wiltsey*, 357 N.W.2d 400, 402 (Minn.Ct.App.1984); *Fink* at 342.

Appellant earns $53,000 annually in a career position with Boise Cascade, and has expressed his intention to continue working for Boise Cascade until his retirement. After seven more years with the company, he will be eligible for retirement benefits. Even if he does not retire from Boise Cascade, he has well-developed marketable skills that assure him of comparable job opportunities.

Respondent, on the other hand, is currently unemployed, and has not worked outside the home on a regular basis in nearly twenty years. The highest wage she has ever earned was $6.00 per hour. While she is healthy, ready, and able to work, she will require additional education and training before she can be expected to obtain employment sufficient to support herself. Under these circumstances, the trial court's decision to award maintenance to respondent was not an abuse of its discretion.

In fact, appellant does not dispute that some maintenance is justified in this case. Where he differs with the trial court is in its award of permanent, rather than rehabilitative or temporary maintenance.

■■■ Appellant correctly states that in Minnesota permanent maintenance awards have been restricted to certain exceptional cases, where there is little likelihood that the once-dependent spouse will ever attain self-sufficiency. *McClelland v. McClel-*

*land,* 359 N.W.2d 7, 10 (Minn.1984); *Abuzzahab v. Abuzzahab,* 359 N.W.2d 12, 14 (Minn.1984); *Arundel v. Arundel,* 281 N.W.2d 663, 666 (Minn.1979).

Nevertheless, appellant's argument does not change the result in this case. While the trial court characterized the maintenance award as permanent, the surrounding language in the trial court's judgment and in its memorandum shows that this was a misnomer. The trial court specifically reserved jurisdiction over the matter, stating that in ten years it would review the situation, with the hope and intent of terminating the award at that time. The trial court structured the award in this way because it believed that it was impossible to predict what the long-term economic effects of re-employment would be for the respondent.

While the trial court's meaning is clear, it would have been preferable for the judgment to set the term of maintenance at ten years with a reservation of jurisdiction on the issue so that the trial court could consider, if requested, an extension or modification of the duration and amount of payments. Therefore, we modify the trial court's judgment to reflect this more accurate characterization of the maintenance award.

With this clarification, we also reject appellant's contention that the trial court abused its discretion in choosing to award maintenance for ten years rather than for a shorter period of time. In *Broms v. Broms,* 353 N.W.2d 135 (Minn. 1984), the supreme court did reduce the trial court's maintenance award from ten years to five years. But in *Broms,* unlike here, the dependent spouse was 32 years old, had only been out of the workforce for five years, and only needed to complete a two year program of graduate study in order to prepare herself for a career in social work. Respondent in this case is ten years older, has not been in the workforce for most of her adult life, and has only an outmoded undergraduate degree to present to potential employers. The trial court did not abuse its discretion in providing her with maintenance for ten years.

2. Finally, appellant contends that the trial court abused its discretion with respect to the amount of maintenance awarded. He claims that respondent demonstrated a need of only $1,200 per month for her and the minor child Sarah, and that the trial court awarded nearly $600 more than her demonstrated need.

Appellant misconstrues the trial court's award. It awarded respondent $1,250 in maintenance and $540.50 in child support for Sarah. It also awarded appellant $265 in child support for Mathew. When these child support awards are offset against each other, respondent has a net gain of $275.50 as child support. The trial court also found that the maintenance award of $1,250 has a net value of $1,068. Therefore, respondent's net monthly income for the support of herself and Sarah equals $1,343.50. This amount does not differ so much from respondent's demonstrated need as to constitute an abuse of the trial court's discretion.

### DECISION

The trial court did not abuse its discretion in awarding maintenance in the amount of $1,250 per month to respondent. The language of the judgment regarding the terms of the maintenance award is modified to provide as follows: Maintenance is awarded for a period of ten years, but jurisdiction is reserved on the issue so that the court may consider, if requested, an extension or modification of the duration and amount of payments.

Affirmed as modified.