In re the Marriage of George W. FLYNN, Petitioner, Appellant,

v.

Katherine J. FLYNN, Respondent.

Nos. C9–86–1354, C6–86–1702.

Court of Appeals of Minnesota.

March 10, 1987.

John P. Lommen, Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.

Edward L. Winer, Daniel J. Goldberg, Moss & Barnett, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and STONE,* JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a dissolution judgment and decree, an order denying a new trial, and an amended judgment. Appellant husband claims the trial court abused its discretion in (1) awarding respondent wife permanent spousal maintenance, (2) valuing the parties' marital property, (3) assigning certain marital property and (4) awarding respondent attorney fees. Appellant also asserts the trial court should have granted a new trial based on judicial bias. Respondent filed a notice of review challenging deferral on amendment of appellant's payment of attorney fees and a cash award and other issues. We affirm in part, reverse in part and remand.

## FACTS

Appellant George W. Flynn and respondent Katherine J. Flynn were married in Minneapolis in July 1964. That fall appellant began law school at Georgetown University and respondent, with a bachelor's degree in elementary education, taught full time during the 1964-65 school year. The parties later returned to Minneapolis where appellant became associated with a Minneapolis law firm in 1967, being made a partner in 1974. Four children were born of the marriage: Jennifer, November 12, 1965; Maureen, November 16, 1966; Timothy, April 26, 1969; and Kathleen, April 7, 1972.

The parties separated in March 1983 and appellant petitioned for dissolution in February 1984. After several delays, trial was held on February 18-21, 1986, at which time both parties were 43 years old.

Dissolution judgment and decree was entered on May 19, 1986. Respondent was awarded sole physical custody of the parties' two unemancipated children and appellant was ordered to pay $1800 monthly child support. The trial court ordered an equal division of the marital property; respondent receiving the homestead, appellant obtaining the estimated value of his law firm partnership interest and his limited partnership interests, and the parties sharing equally the value of appellant's HR-10 (Keogh) retirement plan. Appellant was ordered to pay $4500 permanent monthly maintenance, a $35,517 cash payment and $30,000 for respondent's attorney fees.

On June 3, 1986, both parties moved for amended findings, conclusions and order for judgment. Appellant moved additionally for a new trial based in part on judicial bias. All post-trial motions were argued on June 24, 1986. On June 25, pursuant to Minn.R.Civ.P. 62.01, the trial court stayed execution of the May 19 judgment.

On August 6, 1986, the trial court's order was filed denying appellant's new trial motion and directing entry of amended judgment. The trial court concluded no evidence was presented to support appellant's claim of bias. Relevant orders for amendment required that (1) spousal maintenance be payable in single monthly installments, not bi-monthly, (2) the $35,517 cash award to respondent be payable in three annual installments without interest, and (3) the attorney fees awarded respondent be payable in three annual installments with 6% per annum interest.

Regarding appellant's proposed amendments which were denied, the trial court by memorandum stated:

It cannot be said that partnership in a law firm has no value, as claimed by Petitioner. Stephen G. Dennis, a CPA and a lawyer, cogently explained his re-

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

view of the partnership agreement, and his valuation thereof to Petitioner. That valuation is accepted.

\* \* \* \* \* \*

At trial, Petitioner stated that he would continue to pay private school tuition for the minor children. In an affidavit filed with his brief, Petitioner stated that continued payment of this tuition was on condition his proposal for maintenance and support would be accepted. The affidavit also stated that private tuition was included in Respondent's proposed monthly budget.

Exhibit C, her budget, did include $250 for this purpose. However, this amount was deducted by the Court, with other subtractions and additions as they were testified to by Respondent, in arriving at the figure of $5835 for Respondent's claims for monthly expenses. The amount of $4500 monthly maintenance awarded to Respondent is $350 less than the $4850 submitted by Petitioner as being reasonable.

On August 12, 1986, appellant filed a notice of appeal from the May 19 judgment and decree and that part of the August 6 order denying a new trial (C9–86–1354). Respondent filed notice of review of the May 19 judgment and the August 6 order regarding property valuation, spousal maintenance, deferral of payment of the cash award and attorney fees, and award to appellant of dependency exemptions. On August 22, 1986, amended judgment was entered and on October 8 appellant filed an appeal from the amended judgment (C6–86–1702). On October 13, this court consolidated the two appeals.

## ISSUES

1. Did the trial court abuse its discretion in awarding permanent maintenance?

2. Did the trial court abuse its discretion in valuing the parties' marital property?

3. Did the trial court abuse its discretion in assigning interest payable to appellant as mortgagee?

4. Did the trial court abuse its discretion in awarding respondent attorney fees?

5. Did the trial court err in denying a new trial on the basis of judicial bias?

## ANALYSIS

1. The trial court awarded respondent $4500 permanent monthly maintenance, appellant's obligation terminating on either party's death or respondent's remarriage. Appellant claims permanent spousal maintenance is not just in this case and constitutes a failure to administer equal justice given respondent's age and employability, the marital property distribution, the parties' standard of living, appellant's ability to meet the obligation and respondent's contribution as a homemaker.

A trial court has wide discretion in determining spousal maintenance and its determination is final unless the court abused its discretion. The trial court's determination is examined in light of the factors set forth in Minn.Stat. § 518.552. *Haasken v. Haasken,* 396 N.W.2d 253, 259 (Minn.Ct.App.1986) (citations omitted).

Minn.Stat. § 518.552 permits the trial court in its discretion to order either temporary or permanent maintenance after considering all relevant factors including those enumerated in the statute:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length

of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2 (1986).

Previous Minnesota case law limited permanent maintenance awards to situations involving traditional marriages of provider and homemaker which left a spouse of advanced years with minimal employability little hope of attaining self-sufficiency. *See Abuzzahab v. Abuzzahab,* 359 N.W.2d 12 (Minn.1984); *McClelland v. McClelland,* 359 N.W.2d 7 (Minn.1984). But those decisions were modified by 1985 statutory amendment to Minn.Stat. § 518.552 which states temporary awards are not favored over permanent awards, and if "there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." Minn.Stat. § 518.552, subd. 3 (1986); *see Griepp v. Griepp,* 381 N.W.2d 865, 870 n. 1 (Minn.Ct.App.1986).

Appellant attacks the trial court's findings and conclusions regarding the factors set forth in Minn.Stat. § 518.552, subd. 2 and challenges both the award's amount and its duration. No single factor is dispositive in reviewing a maintenance award. *Elwell v. Elwell,* 372 N.W.2d 67, 69 (Minn.Ct.App.1985).

### a. *Respondent's financial resources.*

Appellant emphasizes his child support obligation is supplemented by payment of the children's private school tuition and health insurance. He also claims respondent's substantial marital property award allows for her self-sufficiency because she received the majority of the parties' liquid assets including the homestead and a $35,-517 cash payment. *See Hattstrom v. Hattstrom,* 385 N.W.2d 332, 338 (Minn.Ct. App.1986), *pet. for rev. denied,* (Minn. June 30, 1986) (substantial cash property settlement would assist spouse in attaining self-sufficiency). But the majority of respondent's property consists of the homestead and her one-half interest in appellant's Keogh plan and neither is liquid. A homestead provides shelter, not income, and respondent should not have to sell the house to provide sufficient monthly income. *Cf. Fink v. Fink,* 366 N.W.2d 340, 342 (Minn. Ct.App.1985) (investment principal normally not required to be invaded to satisfy monthly financial needs).

### b. *Respondent's future employment training.*

Appellant claims Minn.Stat. § 518.552, subd. 2(b) "creates an affirmative obligation on the part of the spouse seeking maintenance to seek appropriate employment." *See Sand v. Sand,* 379 N.W.2d 119, 124 & n. 1 (Minn.Ct.App.1985) (spouse receiving permanent maintenance "did not incur an obligation to increase her earning power through occupational retraining"), *pet. for rev. denied,* (Minn. Jan 31, 1986).

Appellant argues respondent is currently employable in education given her bachelor's degree and teaching experience. He also accurately states respondent's lack of desire to return to teaching. Courts cannot force a spouse to work at a specific job. *See Resch v. Resch,* 381 N.W.2d 460, 462 (Minn.Ct.App.1986) (earning potential, however, may be used to calculate child support payments).

Respondent does have plans for rehabilitation. She wants to enter a two-year

chemical dependency training program at St. Mary's Hospital, and subsequently obtain a master's degree in adolescent psychology at St. Mary's of Winona after three additional years of study. Respondent's ultimate goal is to become an adolescent psychologist in the high school system where she would earn $15,000–$18,000. Even if respondent became employed in the Minneapolis public school system, her earning potential is no more than $20,000. Respondent has the potential to become only partially self-supporting in light of the parties' standard of living.

### c. Parties' standard of living.

The trial court found the "parties have enjoyed a high standard of living throughout their marriage." The evidence supports that finding which is not disputed. Appellant asserts respondent and the minor children have lived comfortably on $5000 per month since the parties' separation. Respondent testified she was receiving approximately $6000 per month during that period. Appellant is now obligated to pay $6300 per month. Respondent and the minor children's monthly living expenses total approximately $6000. While appellant notes respondent's budget included $250 for private school tuition, the trial court stated it deducted that amount in calculating support.

> [T]he court must consider the station in life that the spouse seeking maintenance came to enjoy during the marriage. *Bollenbach v. Bollenbach*, 285 Minn. 418, 427, 175 N.W.2d 148, 155 (1970). *See also* Minn.Stat. § 518.552, subd. 2(c) (standard of living is a factor to consider when determining whether maintenance should be awarded). We agree that a spouse in the position of appellant, who enjoyed an affluent lifestyle during her marriage, cannot now be forced to subsist at a survival level.

*Rosenberg v. Rosenberg*, 379 N.W.2d 580, 586 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Feb. 19, 1986). "The legislature has made clear that [the parties' standard of living] is an important consideration, by repeatedly including it within the maintenance statute." *Laumann v. Laumann*, 400 N.W.2d 355 (Minn.Ct.App.1987). Given the parties' lifestyle, the trial court's award is not inconsistent with providing for respondent and the minor children's needs.

### d. Respondent's absence from job market.

During the parties' 22–year marriage, respondent was employed full time only during the first year. Since then she occasionally taught on a substitute basis and was involved with charitable organizations.

The trial court concluded it would "take judicial notice of the fact that a woman 43 years of age, who has been out of the educational community—or any field of endeavor—for 20 years, will have great difficulty in obtaining employment of any kind." Appellant complains this conclusion exhibits improper use of judicial notice. But the court's language is not reversible error because "judicial notice" appears to have been used only in a colloquial sense. Respondent's 20–year absence from full time employment is substantial and undoubtedly adversely affects her employability.

### e. Respondent's forgone employment benefits.

Appellant claims this factor as applied does not justify permanent maintenance because respondent will receive one-half of appellant's Keogh plan retirement benefits, has budgeted for IRA contributions, and will eventually receive social security benefits. But respondent forfeited potential wages, seniority and her own retirement benefits by giving up teaching. Even if she wished to return to teaching, respondent could not regain her lost opportunities in that career.

### f. Respondent's age and condition.

Respondent at the time of trial was 43 years old and in good physical condition.

### g. Appellant's ability to pay.

Appellant claims the permanent maintenance award will not permit him to main-

tain his established standard of living. He calculates his net annual income at $122,200. Subtracting maintenance and child support obligations, appellant is left with $3883.33 per month. Review of the record indicates, however, appellant understates his net income by subtracting from gross wages private school tuition he voluntarily agreed to pay for the older children. His resulting net monthly income is then in excess of $6000 and approximately equal to his monthly budget.

### h. *Contribution to the marriage.*

Each party contributed considerably to the marriage: appellant financially and respondent as homemaker and hostess.

Appellant claims these factors as applied demonstrate the trial court abused its discretion in determining maintenance both as to length and amount. He asserts at a minimum this court should terminate maintenance when respondent reaches age 62, when she will be receiving social security, IRA benefits, and benefits from appellant's Keogh plan. In the alternative he requests he be assigned the full value of his Keogh retirement plan to avoid a retirement age income windfall to respondent.

We conclude the trial court properly awarded respondent permanent maintenance in the amount determined. Analysis of the factors in Minn.Stat. § 518.552, subd. 2 does not reveal an abuse of discretion. We note with approval the trial court's retention of jurisdiction regarding maintenance pursuant to Minn.Stat. § 518.552, subd. 3.

2. Appellant claims the trial court incorrectly valued certain marital property, including (a) appellant's interest in his law firm partnership, (b) appellant's real estate limited partnership investments, (c) the parties' homestead and (d) appellant's Keogh retirement plan.

The trial court's valuation of marital property will not be overturned in the absence of a clear abuse of discretion or an erroneous application of law. *Servin v. Servin*, 345 N.W.2d 754, 758 (Minn. 1984). "Exactitude is not required of the trial court in the valuation of assets; * * it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979) (cites omitted). *Peterson v. Peterson*, 367 N.W.2d 90, 92 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. July 17, 1985).

### a. *Law firm partnership.*

The trial court awarded appellant his interest in the law firm valued at $98,200. Appellant's interest is governed by the law firm's partnership agreement which divides income into allocated (base pay) and allocable (bonus or discretionary pay) accounts. The agreement anticipates three conditions of termination of a partner's working relationship. First, a partner may die or become permanently disabled. If so, the partner receives a 12–month share of his allocated income. Second, a partner may withdraw from the firm prior to retirement. If so, the partner receives a six-month share of his allocated income. Third, a partner may work to retirement. In that case, the partner does not receive any additional compensation. The firm's lawyers do not make a direct financial contribution for partnership.

The trial court based its findings on the expert testimony of Stephen G. Dennis who estimated the likelihood of appellant's termination under the three options. He calculated the possibility of appellant's death, disability or retirement as zero percent and the likelihood of appellant's withdrawing from the firm as 100 percent. Dennis then calculated appellant's six-month allocated share payable on withdrawal as $98,200.

Dennis testified the likelihood of appellant's death was too remote given his age and condition to reflect any value to appellant. Regarding appellant's retirement, Dennis reasoned:

I disregarded this option also on account of the fact that Mr. Flynn has the present outstanding offer, under the withdrawal rights, and that it is his opinion or, as a logical person, it must be his view that the income benefits he is re-

ceiving from the [law] firm would more than compensate him for the present withdrawal right.

We have stated:

> The trial court's method of valuation "is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach." *Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn.1981), citing *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970).

*Balogh v. Balogh*, 356 N.W.2d 307, 312 (Minn.Ct.App.1984). "A valuation reasonably supported by expert testimony will be affirmed." *Sefkow v. Sefkow*, 372 N.W.2d 37, 43 (Minn.Ct.App.), *remanded on other grounds*, 374 N.W.2d 733 (Minn.1985).

The trial court may rely on expert testimony regarding the likelihood of the various contingencies. *See Balogh*, 356 N.W.2d at 312. But Dennis' forecast is speculative and based on conjecture. Appellant has repeatedly stated he has no plans to withdraw from the law firm and is likely to remain until retirement. The trial court did not make a finding regarding the likelihood of appellant's withdrawal, but review of the record indicates a finding consistent with Dennis' testimony would be erroneous.

■ Appellant recognizes there is some possibility termination of his employment relationship will not be by retirement. He therefore suggests he and respondent should divide equally the asset derived from the remunerable contingency if and when it occurs. *See Balogh*, 356 N.W.2d at 312; *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983). We agree and conclude appellant is required to pay respondent 50% of any partnership interest received upon termination of his employment relationship.

b. *Real estate limited partnerships.*

■ At trial, two witnesses testified regarding valuation of the limited partnerships: appellant and Kenneth Talle, a partner in three investment companies. Based on that testimony the trial court found certain values:

|  | Appellant | Talle | Trial Court |
|---|---|---|---|
| Real Estate Equities 1981 | $ 0 | $10,000 | $ 5,000 |
| NHP Boardwalk Associates 1982 | 15,500 | 29,585 | 22,292 |
| Toy Properties Associates V | 12,000 | 24,562 | 18,531 |
| Polynesian Apartments, Ltd. | 18,275 | 18,275 | 18,272 |
| Stratford Wood Apartments, Ltd. | 6,693 | 12,750 | 9,625 |
| Total | 52,468 | 95,172 | 73,723 |

The trial court merely averaged the witnesses' valuations. Averaging is a fair method of calculation when there is no great disparity between estimated values. *Balogh*, 356 N.W.2d at 313. Although both parties claim error in valuation, we conclude the trial court properly considered the witnesses' testimony and did not abuse its discretion in valuation.

c. *Homestead.*

The trial court valued the homestead in its present condition at $195,000, found a present mortgage balance of $67,758, and estimated realtor commissions and other selling costs at $20,000. It then valued the homestead at $107,242 and awarded it to respondent.

■ Appellant claims the trial court improperly deducted the estimated commission and sale costs from the homestead valuation. He claims consideration of those costs was inequitable because valuation of other assets did not weigh such expenses. But the homestead has been, and continues to be, listed for sale. Estimation and inclusion of these costs was not speculative.

#### d. *HR–10 (Keogh) Retirement Plan.*

■ Appellant claims the trial court valued the Keogh plan improperly by using the wrong date of valuation. The court in its findings valued appellant's interest at $220,826 as of December 31, 1985. Its conclusion stated valuation of participant's interest is the "vested accrued benefit of the participant as of the date of this Judgment and Decree" (May 14, 1986). Appellant complains that all other assets were valued at the date of the marital dissolution trial (February 18, 1986). But as respondent argues, the valuation date (December 31, 1985) was several weeks before the dissolution trial and therefore if either party should be complaining it is respondent and she does not.

3. Appellant is the mortgagee on his cousin's $28,000 homestead mortgage. He borrowed $28,000 to finance the mortgage and therefore his obligation and the mortgage principal offset. The trial court found appellant is also entitled to $9000 interest owing from the mortgagor. It concluded respondent is entitled to one-half of any payment of interest owing.

Appellant claims he is entitled to all interest payable because he bears the burden of loss on the mortgage and respondent does not have responsibility for interest on appellant's loan.

■ Respondent claims partial entitlement only to that interest accrued prior to the entry of the judgment and decree. We agree that was the intent of "interest owing" in the court's judgment. *See Gummow v. Gummow*, 375 N.W.2d 30, 35 (Minn.Ct.App.1985) ("Property acquired by the parties * * * prior to the actual final decree is marital property.").

4. Regarding respondent's attorney fees, the trial court found:

Respondent has incurred substantial attorney's fees and costs as a result of this proceeding. Discovery was necessary, as well as the employment of experts. The case was on the trial calendar four times and not reached, and discovery had to be updated. The total amount of attorney's fees, expert fees, and other costs is $46,823. Respondent has had no income to pay these fees.

The court then awarded respondent $30,000 for her attorney fees and costs.

An award of attorney's fees rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn. 1977); *see also* Minn.Stat. § 518.14 (1984) (trial court may, after considering financial resources of both parties, order one party to help defray the legal expenses of the other). We will rarely reverse the trial court on this issue * * *.

*Witeli v. Witeli*, 392 N.W.2d 756, 758 (Minn.Ct.App.1986).

■ Appellant claims by the division of marital property and award of maintenance, respondent has ample income to pay her own fees. But "a sizeable award of assets does not preclude an award of fees in a dissolution proceeding." *Nemitz v. Nemitz*, 376 N.W.2d 243, 249 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. Dec. 30, 1985). Appellant asserts he is without proper liquid assets to pay respondent's fees. He also claims the fees charged unreasonably overvalued the services performed by respondent's counsel, but at oral argument admitted no direct evidence was submitted regarding the unreasonableness of the fees. *See Dicks v. Dicks*, 380 N.W.2d 156, 160 (Minn.Ct.App.1986) (reasonableness may be determined by trial court observation).

■ The trial court did consider appellant's present ability to pay when it amended judgment by deferring appellant's lump sum attorney fees payment into three annual installments at 6% interest. The court also deferred payment of the $35,517 cash obligation over three years. Respondent argues this amendment was an abuse of discretion because appellant can pay these obligations out of his year-end compensation or by short-term loan. In the alternative, respondent requests interest to accrue on the installments at judgment interest, not 6%. We disagree with respondent and

find no abuse of discretion regarding the amended attorney fees award or payment provisions.

5. Appellant claims he is entitled to a new trial on the basis of judicial bias. He asserts the court's concept of women is misguided and antiquated. Appellant insists women in today's society are capable of self-sufficiency and should be required to utilize their skills for their own support. We have conducted a careful review of the record and conclude that appellant's allegations of judicial bias are without merit.

## DECISION

The trial court did not abuse its discretion in awarding respondent permanent maintenance nor in valuing the parties' marital property, except regarding appellant's interest in his law firm. Appellant is required to distribute to respondent 50% of any payment he receives pursuant to his partnership agreement upon death or disability or his withdrawal from the firm. The trial court did not abuse its discretion in assigning interest payable under the involved mortgage nor in awarding respondent attorney fees. Appellant's new trial motion was properly denied. We remand to the trial court for equalizing redistribution of the parties' marital property consistent with this opinion.

Affirmed in part, reversed in part and remanded.