*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-1032

In re the Marriage of:
Marianne Ronate Reis, petitioner,
Appellant,

vs.

Thomas Michael Hallberg,
Respondent.

**Filed May 9, 2016**
**Reversed and remanded**
**Bjorkman, Judge**

Chisago County District Court
File No. 13-FA-13-140

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Virginia M. Stark, Stark Law Office, Lindstrom, Minnesota (for appellant)

Samantha J. Gemberling, Wolf, Rohr, Gemberling & Allen, P.A., St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges several aspects of the judgment dissolving her marriage. Because the district court abused its discretion by setting an incorrect valuation date for the marital and real-property assets, by awarding insufficient spousal maintenance, by declining to order life-insurance coverage to secure respondent's maintenance obligation, and by denying appellant need-based attorney fees, we reverse the judgment, except insofar as it dissolves the marriage and obligates respondent to pay child support, and remand for further proceedings.

## FACTS

Appellant Marianne Ronate Reis and respondent Thomas Michael Hallberg were married in 1992, and have three children, who were 12, 16, and 21 years old at the time of the dissolution. The parties separated in 2012 and both petitioned for dissolution. The pretrial settlement conference was held on February 21, 2014.

The parties agreed to joint legal custody of the children, with mother having sole physical custody. And the parties agreed that father would pay mother $2,000 per month for child support. On September 29-30, a court trial was held to determine the spousal-maintenance award, divide marital property and marital debt, and award attorney fees. The marriage was dissolved by judgment entered on December 24.

At the time of trial, mother was employed part time as a massage therapist at St. Croix Regional Medical Center (SCRMC) earning monthly gross income of $1,548.87. A vocational expert testified that mother was underemployed, and could earn $4,080 per

month if she worked full time in the retail massage business. Father earned monthly gross income of $14,730 while working at Edward Jones in 2014. Mother claimed $5,453 in monthly expenses, which did not include expenses directly related to childcare. Father claimed $11,329 in monthly expenses. Ultimately, the district court found that mother had $5,033 of monthly expenses and father had $8,498 of monthly expenses. The district court found that mother was able to work full time and could earn a monthly gross income of $4,080. The court imputed that income to mother, and awarded her temporary spousal maintenance of $1,000 per month for ten years.

The judgment also awarded mother the $6,300 equity in the Lindstrom home, which it calculated based on the 2013 fair-market value ($119,300) and mortgage balance (approximately $113,000). Father received the $14,730 equity in the Forest Lake home, based on the 2012 collective fair-market value ($198,100)[1] and December 2013 mortgage balance ($183,370). The home's collective fair-market value in 2013 was $209,200.

Mother moved for amended findings or a new trial, asking the district court to amend the valuation date, recalculate each parties' income and expenses, amend the award of spousal maintenance, award mother need-based attorney fees, and order father to obtain life insurance to secure his support and maintenance obligations. The district court denied the motion. As to the valuation date, the district court found that the parties agreed, during the July 15, 2013 temporary hearing, to use the separation date to value marital debt. After acknowledging that the parties did not directly stipulate that the date of separation would

---

[1] The Forest Lake home included two separate real estate parcels. The collective fair-market value refers to the aggregate of these two parcels.

3

be the valuation date for all purposes, the district court determined to use the separation date to value all of the parties' assets and debts.

The district court denied mother's request for need-based attorney fees, reasoning that since the date of the parties' separation was the valuation date, any assets the parties used to pay attorney fees were nonmarital.[2] And the district court denied mother's request to secure father's spousal-maintenance and child-support obligations with life insurance, noting that because the support was temporary, it was not an "exceptional case" that required life insurance. Mother appeals.

## D E C I S I O N

**I.** **The district court abused its discretion by using the parties' separation date as the valuation date.**

A district court "shall value marital assets for purposes of division between the parties as of the day of the initially scheduled prehearing settlement conference, unless a different date is agreed upon by the parties, or unless the court makes specific findings that another date of valuation is fair and equitable." Minn. Stat. § 518.58, subd. 1 (2014). We review a district court's decision to use a valuation date other than the prehearing settlement conference for an abuse of discretion. *Grigsby v. Grigsby*, 648 N.W.2d 716, 720 (Minn. App. 2002), *review denied* (Minn. Oct. 15, 2002).

Mother argues that the district court abused its discretion by setting the valuation date for the parties' assets as the separation date. This argument has merit. The district

---

[2] The district court required mother to pay father $1,000 of attorney fees for a violation of court rules.

4

court found that the parties did not directly stipulate to a valuation date other than the prehearing settlement conference, but, at the July 15, 2013 temporary hearing, the parties agreed to be responsible for the credit-card debts that each incurred since the separation date. The district court made no findings regarding whether use of the separation date for all valuation purposes is fair and equitable as required by Minn. Stat. § 518.58, subd. 1. Moreover, the record shows that the agreement the parties reached in July 2013 was limited to specific debts the parties discussed during that hearing. Nothing occurred during the hearing or contemporaneously that indicated the separation date would be used as the valuation date for all of the marital assets and debts. This is evidenced by the fact that the parties' evidentiary submissions at trial focused on the pretrial date as the valuation date. On this record, the district court abused its discretion by using the separation date as the valuation date.

We specifically note clear error in the district court's valuation of the marital real property. The district court awarded mother the Lindstrom home, which had a 2013 value of $119,300 and a mortgage balance of approximately $113,000. Father was awarded the Forest Lake home, which had a 2012 collective fair-market value of $198,100 and a 2013 mortgage balance of $183,370. The record shows that the Forest Lake home's collective fair-market value in 2013 was $209,200. The district court clearly erred by using different dates to value the two homes. By using the 2012 value of the Forest Lake home, the district court attributed an equity value of $14,730 to father. If the district court had used the 2013 value, an equity value of $25,830 would have been attributed to father. On remand, the

5

district court should calculate the equity values for the real property using the same valuation date.

**II.   The district court abused its discretion by awarding mother spousal maintenance of $1,000 per month for ten years.**

A district court may award spousal maintenance if a spouse demonstrates that she does not have sufficient property to provide for her reasonable needs or cannot reasonably provide adequate self-support. Minn. Stat. § 518.552, subd. 1 (2014); *Robert v. Zygmunt*, 652 N.W.2d 537, 544 (Minn. App. 2002), *review denied* (Minn. Dec. 30, 2002). Such awards must be in an amount and duration that the district court deems just after considering the ability of the recipient to provide for her needs independently, the age and health of the recipient, the standard of living during the marriage, the length of the marriage, the contribution of both parties to marital property, and the resources of the obligor. Minn. Stat. § 518.552, subd. 2 (2014). "The purpose of a maintenance award is to allow the recipient and the obligor to have a standard of living that approximates the marital standard of living." *Peterka v. Peterka*, 675 N.W.2d 353, 358 (Minn. App. 2004).

We review a district court's spousal maintenance award for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). Generally, a district court's resolution of a question committed to its discretion will, on appeal, be ruled to be an abuse of the district court's discretion if the district court's exercise of its discretion (a) is based on an erroneous application of the law, (b) is based on findings of fact that are unsupported by the evidence, or (c) results in a resolution of the question that is contrary to logic and the facts on record. *See, e.g., Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). We

6

view the evidence in the light most favorable to the district court's findings and defer to its credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Findings of fact related to spousal maintenance will be upheld unless they are clearly erroneous. *Gessner v. Gessner*, 487 N.W.2d 921, 923 (Minn. App. 1992). Mother challenges both the amount and duration of spousal maintenance. We address each issue in turn.

**Amount of Award**

Mother first argues that the district court clearly erred when it found that she was underemployed and imputed income to her based on her earning capacity. We are not persuaded. The ability to become self-supporting is a relevant factor in awarding spousal maintenance. *Passolt v. Passolt*, 804 N.W.2d 18, 25 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011). A district court may impute income to a party seeking spousal maintenance without making a finding that the party has decreased her income in bad faith. *Id.*[3]

At the time of trial, mother had been employed as a part-time massage therapist at SCRMC for six years. She earned $1,548.87 per month pursuant to a written contract that commenced in September 2013 and continued for a term of five years. Both mother and

---

[3] Mother also points out that "[c]ourts cannot force a spouse to work at a specific job." *Flynn v. Flynn*, 402 N.W.2d 111, 114 (Minn. App. 1987), *review denied* (Minn. Nov. 24 1987). But the holding in *Flynn* relies on *Resch v. Resch*, 381 N.W.2d 460, 462 (Minn. App. 1986), which states that although a "court cannot direct a person to work at a specific job against [her] will" it is not prohibited "from directing a person to pay support commensurate with a wage [s]he could earn if [s]he sought employment in an occupation for which [s]he is trained and has the present ability to perform."

her supervisor expected the contract to be renewed.[4]  Father's vocational expert—Jan Lowe—testified about mother's earning potential.  Lowe prepared a market report that indicated jobs that were available in mother's labor market that paid between $42,000 and $67,000 per year.  Lowe concluded that based upon mother's education and experience, she could work 30 hours per week for 48 weeks per year, and expect to earn $49,000.  This salary equates to roughly $4,080 of gross monthly income.  Mother challenged this evidence, pointing to her own research that revealed no massage therapist positions that paid the level of income Lowe reported.  But the district court found Lowe's testimony to be more credible; we defer to the district court's determinations of witness credibility. *Vangsness*, 607 N.W.2d at 474.  Because record evidence supports the district court's findings that mother has the potential to earn $4,080 gross monthly income, we discern no clear error in the district court's finding that mother is voluntarily underemployed.

But we are not persuaded that the district court acted within its discretion by immediately imputing monthly gross income of $4,080 to mother.  Immediate imputation ignores the fact that mother is presumably under contract with SCRMC and requires some amount of time to secure other employment to reach the higher earning capacity.  And mother works limited hours to care for the parties' children, one of whom is still a minor.

Mother next argues that the district court incorrectly calculated the parties' reasonable monthly expenses.  We agree.  Spousal maintenance is designed to provide the

---

[4] Record evidence indicates that mother was under contract with SCRMC from September 2008 until September 2013.  The Director of Rehab Services at SCRMC testified that they intended to renew the contract when it expired.  But the record does not indicate the duration of the renewed contract or whether it was in fact renewed.

8

recipient with sufficient resources to maintain the circumstances and living standards the parties enjoyed during the marriage. *Lee v. Lee*, 775 N.W.2d 631, 642 (Minn. 2009) (stating that a party shall receive maintenance in an amount that is reasonably needed to support one's self). Mother submitted a list of monthly expenses totaling $5,453. The district court rejected her claimed expenses for car-replacement savings, furniture-replacement savings, household supplies, and general savings as either duplicative or inappropriate because they are savings based, and concluded that the reasonable monthly expenses for mother and the children are $5,033. The district court reduced father's claimed expenses by $831, excluding expenses related to home maintenance, gifts, client appreciation, car-replacement savings, and personal-assistance expenses. And the district court subtracted $2,000 from an unspecified category of father's expenses,[5] finding his reasonable monthly expenses are $8,498. These calculations are flawed in several respects.

First, the district court found that mother's claimed expenses include expenses associated with her children; the record indicates that they do not. The parties agreed that father will pay mother $2,000 per month for child support, and neither party disputes this amount on appeal.

Second, the district court rejected expenses claimed by both parties on the ground that they are "savings based." The fact that an expense is related to savings does not, in and of itself, mean it is unreasonable. *See Kampf v. Kampf*, 732 N.W.2d 630, 634 (Minn.

---

[5] Father lists "Child support" and "Spousal Maintenance" as each costing $2,000 on his expense sheet. The district court subtracted one of these categories from the calculation of father's expenses, but it is not clear which category. On remand, the district court should specify which category was deducted from father's claimed expenses.

App. 2007) (stating that savings expenses can be included in reasonable monthly expenses if they were part of the standard of living during marriage), *review denied* (Minn. Aug. 21, 2007). In the absence of evidence or a finding that the parties did not save money for future expenditures during the marriage, the district court erred by rejecting expenses solely because they are savings based.

Third, the district court inconsistently attributed credit-card debt as a monthly expense to each party. Father's listed expenses included $600 for "credit card/finance charges." Although mother did not similarly include monthly credit-card payments in her list of monthly expenses, the district court was aware of her credit-card debt. Account balances from the parties' credit-card accounts were admitted into evidence, and in the judgment, the district court attributed $10,233.57 of the parties' outstanding credit-card debt to mother. The district court erred by including $600 monthly credit-card payments in father's expenses and not attributing a corresponding amount to mother.

Finally, the district court permitted father to claim $1,000 per month for college expenses incurred by the parties' adult child. A "[district] court must fairly determine maintenance without considering the needs of the adult children in setting the amount of maintenance." *Musielewicz v. Musielewicz*, 400 N.W.2d 100, 103 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). The district court erred by including the adult child's college costs in father's monthly expenses.

**Duration of Award**

Generally, a district court has broad discretion in deciding the duration of spousal maintenance. *Reif v. Reif*, 410 N.W.2d 414, 416 (Minn. App. 1987). But we may reverse

a decision regarding an award's duration if it is against logic and facts on the record. *Napier v. Napier*, 374 N.W.2d 512, 515 (Minn. App. 1985). If a district court is uncertain about the recipient's ability to become self-supporting, it must order permanent spousal maintenance. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009).

Mother asserts that the district court abused its discretion by awarding temporary maintenance for only ten years. We agree. The district court found that ten years was "sufficient to allow [mother] to be fully self-supporting by allowing her time to find full-time employment or pursue schooling." This finding is inconsistent with the district court's imputation of income to mother in an amount less than what the court found her reasonable expenses to be. Indeed, the district court found that mother requires spousal maintenance of $1,000 per month to cover her expenses even after income is imputed to her. Nothing in the record suggests that in ten years, mother's income potential will increase by $1,000 per month, or her expenses will decrease by that amount.

In sum, the record supports the district court's finding that mother has the potential to earn $4,080 per month in her chosen profession. But the district court miscalculated the parties' monthly expenses and abused its discretion by limiting spousal maintenance to ten years. Accordingly, we remand for the district court to recalculate the parties' monthly expenses and determine the correct amount of spousal maintenance. The district court should also reconsider the duration of the award and determine whether the evidence supports immediate imputation of $4,080 in gross monthly income to mother.

**III.  The district court applied the wrong standard for deciding whether father must secure his spousal-maintenance obligation with life insurance.**

Unless otherwise agreed upon or expressly provided in a dissolution judgment, an obligation to pay future spousal maintenance terminates upon the death of either party. Minn. Stat. § 518A.39, subd. 3 (2014). But a district court "may require sufficient security to be given for the payment of [maintenance] according to the terms of the order." Minn. Stat. § 518A.71 (2014). "The district court has discretion to consider whether the circumstances justifying an award of maintenance also justify securing it with life insurance." *Kampf*, 732 N.W.2d at 635 (quotation omitted).

The district court denied mother's request to have father's spousal-maintenance obligation[6] secured by a life-insurance policy based on its legal conclusion that security for future support payments is only required in exceptional cases. *Fastner v. Fastner*, 427 N.W.2d 691, 701 (Minn. App. 1988). But in *Kampf,* we held that the "exceptional-case standard" was eliminated by the 1985 amendments to the spousal-maintenance statutes. 732 N.W.2d at 635. Under the applicable law, district courts must consider the obligee's age, education, vocational experience, and employment prospects when determining whether a spousal-maintenance award should be secured by life insurance. *Id.* By denying mother's request solely on the ground that this is not an exceptional case, the district court failed to consider the relevant factors justifying security that are described in *Kampf*. On

---

[6] Mother requested the district court to order that both the child-support and spousal-maintenance obligations be secured by life insurance. But on appeal, mother only argues that the spousal-maintenance obligation should be secured.

12

remand, the district court must consider the *Kampf* factors to decide whether father's spousal-maintenance obligation should be secured by life insurance.

**IV.     The district court must reconsider mother's entitlement to need-based attorney fees.**

In marital-dissolution proceedings, the district court "shall" award attorney fees if it finds (1) the fees are necessary to a party's good-faith claim; (2) the party from whom fees are sought has the means to pay them; and (3) the party who seeks fees does not have the means to pay them. Minn. Stat. § 518.14, subd. 1 (2014); *Schallinger v. Schallinger*, 699 N.W.2d 15, 24 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005).

The district court denied mother's attorney fee request because it found she had the means to pay fees out of her spousal-maintenance award.[7] But, as noted above, the district court's findings regarding the parties' respective income and expenses are flawed. And the district court did not include mother's past or future legal expenses in its expense calculation. Because numerous errors impacted the district court's decision to deny mother need-based attorney fees, the district court should reconsider her request on remand along with the spousal-maintenance and property-division issues. We leave to the district court's discretion the issue of whether to reopen the record on remand.

**Reversed and remanded.**

---

[7] Mother asserts that because the profit-sharing account and home equity are not liquid assets, they should not be considered in determining her ability to pay attorney fees. But in *Schallinger*, we affirmed the denial of attorney fees despite the fact that the spouse seeking fees liquidated a portion of her investment accounts to pay her attorney. 699 N.W.2d at 24. Although mother may have to liquidate a portion of the profit-sharing account to pay her attorney, that alone does not necessitate an order for need-based attorney fees.

13