**In re the Marriage of Roger A. KOSTELNIK, Petitioner, Appellant,**

v.

**Patricia M. KOSTELNIK, Respondent.**

**No. CX–84–1505.**

Court of Appeals of Minnesota.

May 14, 1985.

Review Denied July 26, 1985.

Allen H. Aaron, Minneapolis, for appellant.

Jeanett Janecek, New Brighton, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Presiding Judge.

Roger Kostelnik appeals from the trial court's order which divided the parties' assets and required him to pay maintenance of $1800 per month for seven years. Patricia Kostelnik also sought review under Rule 106, Minn.R.Civ.App.P. We affirm in part, reverse in part, and remand for the trial court to make a finding of Roger's net income and set maintenance at a reasonable level.

## FACTS

Roger and Patricia Kostelnik were married in 1957. Roger owns an insurance business and Patricia worked as a registered nurse until 1979. At the time of the hearing she was unemployed. In addition to her out of home employment, Patricia reared four children (all of whom are now emancipated) and performed the bulk of the housekeeping tasks throughout the marriage. Patricia also helped Roger set up his insurance agency and assisted him with various tasks in that connection throughout the marriage.

The trial court found Roger's gross income to be $93,000. It made no finding of net income or even gross income minus business expenses (taxable income). His 1981 income tax return showed pre-tax income of $65,871.

Patricia worked as a registered nurse until 1979, first as a general duty nurse and then as a supervisor. In 1979 she earned $1859 per month. She last renewed her license in 1980, but because she did not renew it again or take the 30 credits of required continuing education, her license expired in 1982. Testimony at trial indicated she could renew her license just by taking the 30 credits of continuing education and reapplying. The nursing supervisor at the hospital where Patricia worked until 1979 testified that Patricia would then be qualified for jobs there which, at the time of the hearing, paid $1940 per month. Other testimony, however, established that the market for nurses in the Twin Cities is tight, and that it would not be easy for a nurse of Patricia's age, health, and time away from nursing to find a job right away.

From August 1979 to September 1980 Patricia worked in a restaurant which she and Roger bought. She claims she cannot now return to nursing because of physical and mental health problems which disable her. Records indicate that the last treatment for the back injury she claims, however, was in 1967, and the other health problems she claims seem to have given

her little trouble until they became an issue in this dissolution.

The trial court awarded the parties' homestead, valued at $98,000 and subject to a mortgage of approximately $41,000, to Patricia. It divided the parties' personal property approximately in half, and awarded Roger's business, which it valued at $12,486.06, to him. Roger was also required to pay $5,000 of Patricia's attorney fees. Using the court's figures, the percentage of assets awarded to Patricia was 57 and the percentage awarded to Roger was 43. Roger, however, contends that the trial court neglected to take into account encumbrances on a car valued at $3,000 and a boat valued at $3,500 which were awarded to him. These omissions, Roger argues, make his share of the property closer to 40%. Patricia contends that mistakes in valuation of the parties' home and Roger's business make her share smaller than 60%.

A pre-trial order issued in this case required Patricia's attorneys to give Roger's attorneys the name and expected testimony of any doctors who were to testify to any disability of Patricia's, as well as any updated reports on her physical or mental condition they received. The names of many doctors were disclosed, but no copies of reports and no expected testimony were ever sent. The last report Roger received was a report by Patricia's psychiatrist which stated that she was suffering from a transitory depression which would not disable her or be permanent. That same psychiatrist testified at trial that Patricia was, because of her continuing depression, disabled from working. Roger contends such testimony was in violation of the pre-trial order and should not have been admitted.

In response to what Roger anticipated that psychiatrist would say (based on the report stating that Patricia's depression was transitory), Roger called a psychiatrist who had given Patricia an adverse examination. He testified that Patricia's depression was normal, considering she was going through a divorce she had not wanted, and that, far from being disabled from

working because of it, working would be therapeutic for her since it would keep her mind occupied. He also stated that in his opinion she had no physical problems that would preclude her from working as a nurse.

After Roger presented his case-in-chief, Patricia's psychiatrist testified that, in his opinion, Patricia's depression was disabling. As rebuttal, then, Roger attempted to call several witnesses to testify to recent activities by Patricia. Rather than allowing this rebuttal evidence to be presented, however, (which evidence would have gone to the issue of whether Patricia is disabled by her depression or her physical problems) the trial court stated that the trial was concluded. The trial had already continued on for more than twice as long as the attorneys had estimated, and the trial court had cautioned them many times to keep things brief. Roger's rebuttal testimony was later presented to the court by affidavit.

## ISSUES

1. May Patricia seek review of the lower court's order refusing to amend the findings of fact even though she failed to make a motion for a new trial or make a post-trial motion for additional property or maintenance?

2. Did the trial court err in dividing the parties' property?

3. Did the trial court err in ordering Roger to pay $1800 per month in maintenance?

4. Did the trial court err in allowing Patricia's psychiatrist to testify to psychiatric disabilities, in light of the pre-trial order, or in cutting off Roger's rebuttal testimony?

## ANALYSIS

### I.

*Notice of Review*

■ Minn.R.Civ.App.P. 106 states:

A respondent may obtain review of a judgment or order entered in the same

action which may adversely affect him by filing a notice of review with the clerk of the appellate courts.

Roger contends that Patricia could not seek review of the trial court's order which denied both her and Roger's motions for amended findings of fact and conclusions of law since she would have been unable to appeal the same order had she desired to. (She did not make a motion for a new trial or for additional maintenance or property in her motion, only for amendments to the findings of fact to clarify the property division.) Rule 106 does not condition the right to file a notice of review on the order being an appealable order as to respondent, however. A notice of review may not be filed unless an appeal has already been commenced. Its purpose is to allow a matter that the appellate court will be hearing anyway to be heard in its entirety. As such, it would be counterproductive to require an order which respondent wants reviewed to be an appealable order as to the respondent.

The supreme court's decision in *McGuire v. C. & L. Restaurant, Inc.*, 346 N.W.2d 605 (Minn.1984) supports this view. There, respondent did not move for a new trial at the district court level, but after appellant appealed the judgment in respondent's favor, respondent alleged errors of law by notice of review. The court rejected appellant's argument that respondent was precluded from alleging such errors, stating:

> By taking this appeal, appellant forced respondent to participate in these appellate proceedings. In the interests of judicial efficiency, we believe it advisable to resolve all controversies between these parties at this time.

*Id.* at 614, n. 11.

## II.

*Property division*

■ Patricia asserts that the property division was an abuse of the trial court's discretion because of errors the court made in evaluating the parties' home and Roger's insurance business.

In her brief, Patricia asserts the trial court erred in taking Roger's estimate of the home's value ($98,000) rather than her estimate ($86,000). However, it is within the trial court's discretion to choose one appraisal over another, and by taking one of two proffered appraisals, the trial court cannot be said to have erred. *See Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975).

■ In evaluating Roger's insurance business, the court considered that Roger's insurance agency is operated on a contract from the Farmers Insurance Group. That contract provides for the payment of a certain sum should Roger decide to get out of the business, providing that Roger does not solicit his Farmers policyholders for one year, that he gives notice of his intention to terminate the contract, and that he has not embezzled any premiums or otherwise harmed the value of the business substantially. That sum is called the "contract value," and it fluctuates depending upon how much money Roger takes in. At the time of the hearing, it was between $84,000 and $86,000. The company provides Roger with an updated contract value monthly.

The trial court took the current contract value and discounted it as though Roger was going to receive it in 20 years (when he turns 65). Patricia is right, then, in saying that in doing that the court was discounting to present value what was already a present value. However, since the contract value fluctuates with the volume of business Roger does, there is no way of knowing what the contract value will be in 20 years and thus of knowing what figure to discount to present value. Further, the contract value does not represent a sum Roger could invest and receive interest on. Roger has stated that he intends to work at the same business indefinitely, and the trial court's treatment of the contract's value is thus a reasonable way to deal with it. "The trial court's method of valuation 'is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach.'" *Balogh v. Balogh*, 356 N.W.2d 307, 312 (Minn.App.1984) (quoting *Castonguay v.*

*Castonguay,* 306 N.W.2d 143, 147 (Minn. 1981). Thus, while there may be more exacting methods of valuing an insurance business, we cannot say the trial court erred.

### III.

### *Maintenance*

■ Roger contends the trial court erred in ordering him to pay maintenance of $1800 per month for seven years. We agree.

In ordering maintenance, a court must consider not only one spouse's needs, but also the other spouse's ability to pay. Minn.Stat. § 518.552, subd. 2(f) (1982). In order to determine ability to pay, the court must make a determination of the payor spouse's net or take-home pay. Here, the court found Roger's income to be $93,000 before business expense deductions and before taxes. The trial court made no finding of Roger's pre-tax, post business expense income, but testimony indicated it was in the $65,000–68,000 range. No exact testimony as to Roger's *net,* after tax income was elicited at trial, although *respondent's* expert estimated it to be $34,000–35,000. Appellant's expert had a similar figure. Since the margin of net income was close and both parties offered testimony agreeing with that narrow margin, it is upon that figure that reasonable maintenance should be based.

Once the payor spouse's net income has been determined, one method of determining fairness and reasonableness is to compare the amounts of maintenance awarded in other cases where the paying spouse had a similar income. Even using the very rough estimate of Roger's net income given by respondent ($34,000–35,000) which was a few thousand dollars higher than his own, such an analysis leads to the conclusion that $1800 per month ($21,000 per year) is unreasonably high. In *O'Brien v. O'Brien,* 343 N.W.2d 850 (Minn.1984), the husband's pre-tax income was $60,000. The wife was awarded maintenance of $300 per month, which was approximately 10% of what the court stated was the husband's

net income ($36,000). In *Broms v. Broms,* 353 N.W.2d 135 (Minn.1984), the husband's pre-tax income was approximately $60,000, and spousal maintenance was $1,000 per month. And in *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979), the husband's pre-tax income was $107,000, while the spousal maintenance award was $1,000 per month. The $21,600 yearly Roger is required to pay is unreasonable, given his after-tax income of $35,000. On remand, the trial court is instructed to make a determination of Roger's net income and award a reasonable amount of maintenance based upon that figure.

### IV.

### *Alleged trial errors*

■ It is difficult to determine from the record what Patricia's attorney had disclosed to Roger's attorney regarding psychiatric testimony and testimony regarding physical problems. It is clear that Patricia's attorney did provide him with a list of doctors who could be called to testify and with authorizations for him to obtain her medical records. It is also clear that Patricia's treatment by the psychiatrist was ongoing, and continued during the period between the pre-trial order in February and the trial in July and August. Roger did in fact attempt to rebut the psychiatrist's testimony about Patricia's alleged disability, and it is unclear how he could have presented his case any differently if he had known of everything Patricia's psychiatrist would testify to. It cannot be said that Roger was unfairly surprised by any testimony, and thus its admission did not constitute prejudice mandating a new trial.

The trial court's abrupt conclusion of the trial, while puzzling, arguably did not prejudice appellant's case. He did, in fact, present rebuttal by affidavit. Further, all rebuttal he wanted to present appeared repetitive: everything stated in the rebuttal affidavit had already been presented by earlier testimony. The evidence excluded likely would not have changed the result. While we do not countenance an unex-

plained cut-off of testimony, on the facts we do not find reversible error.

## DECISION

Trial court did not err in dividing the parties' property or in conducting the trial. The award of spousal maintenance, however, was not based upon a finding of appellant's disposable (take-home) income, and was unreasonably high. We remand to the trial court on that issue.

Affirmed in part, reversed in part, and remanded.