**In re the Marriage of Anne C. LYNCH, Petitioner, Respondent,**

v.

**Gregory G. LYNCH, Appellant.**

**No. CX–87–28.**

Court of Appeals of Minnesota.

Sept. 1, 1987.

Alan Dorfman, Dorfman & Dorfman, Ltd., Minneapolis, for respondent.

Kenneth G. Schivone, St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Gregory Lynch appeals from the trial court judgment in a marital dissolution action in which he claims the trial court abused its discretion in the award of spousal maintenance and allocation of marital property and debt. We affirm and remand for correction of a clerical error in the judgment.

## FACTS

Gregory and Anne Lynch, both 54, have been married since 1959. For the first seven years of the marriage, the Lynches lived in Minnesota, where their five children were born. Most of the remaining years the Lynches lived outside the United States—in Caracas, Venezuela, and Montreal, Canada—because of Gregory Lynch's employment. At the time of trial, all the Lynch children had reached majority and resided in Canada. Gregory Lynch remained in Caracas, Venezuela, where he is Director of Operational Services for MONACA, a subsidiary of International Multifoods. Anne Lynch returned to the United States for medical treatment in June 1984 and resides in St. Paul with her 83-year-old aunt.

Gregory Lynch has a Bachelor of Civil Engineering degree and was the primary wage earner throughout the marriage. He has been employed by International Multifoods or its Venezuelan subsidiary, MONACA, since 1964. His base salary is approximately $75,500 plus an annual bonus of $14,100. He estimated his 1986 after-tax income at $63,000. His benefit package with MONACA includes comprehensive dental and medical coverage, a disability plan, and group term life insurance in the amount of $211,550. He is 100 percent vested in the company pension plan and participated in a Voluntary Investment Savings Plan (VISA) in which there is a balance of $30,460.02. He also has a profit-sharing account with a balance of $1,210.64, and the company has made contributions totaling $867 to a PAYSOP account on his behalf.

Anne Lynch has a high-school diploma and attended college for a short time. She has assisted in the various relocations and worked as a homemaker throughout the marriage, employed outside the home only for a few months as a telephone receptionist for a volunteer organization. Anne Lynch's medical condition is complex. She has had gastrointestinal surgery for ulcers, a surgical intestinal revision, a number of episodes of pneumonia, osteoporosis with accompanying vertebrae compression fractures, recurring anemia and fatigue. In 1984 she was hospitalized for a chronic kidney-urinary tract infection, a lobectomy that removed the right upper lobe of her lung to excise a fungal nodule and in 1985 for a chronic nutritional-metabolic disorder. In 1986 she was treated for rib fractures resulting from the osteoporosis, recurrence of the urinary tract infection, knee, hip and back pain, mononucleosis, seizure disorder,

bronchitis, abnormal liver function, an inoperable stomach disorder, and depression.

The trial court found that Anne Lynch is chronically ill and presently disabled with no clear prognosis for recovery, without professional training or academic credentials, and competitively unemployable, relying entirely on her husband for financial support.

During their marriage the Lynches enjoyed the standard of living of successful executives of multinational corporations. In Venezuela they lived in a 14–room house with five bedrooms and seven bathrooms maintained with the assistance of a part-time maid. The Lynches' social life was closely intermingled with Gregory Lynch's business pursuits, and Anne Lynch entertained and prepared meals for her husband's business associates on a regular basis.

The Lynches own no real estate and have no nonmarital property. When they separated, Gregory Lynch retained personal property valued at $7,000 to furnish his two-bedroom apartment in Venezuela. The remaining personal property was either sold in Venezuela or shipped to Minnesota where it was still in storage at the time of trial. Gregory Lynch sold the family car for $3,500 and retained the proceeds.

The trial court found that Anne Lynch's reasonable monthly living expenses are $2,500. It found that Gregory Lynch's net income for 1986 would be $63,000, or $5,250 per month, and his living expenses would total $2,087 per month. The court ordered Gregory Lynch to pay permanent spousal maintenance of $2,500 per month to Anne Lynch. It awarded Anne Lynch the $30,460 in the investment savings plan account, two life insurance policies, a $10,000 cash payment, all personal property in her possession or in storage in Minnesota, her car, and her checking account.

Gregory Lynch was awarded his retirement fund with a present actuarial value of $31,076, his PAYSOP account with a value of $649.69, his profit-sharing plan with a balance of $1,210.40, and all personal property, fixtures and appliances in his posses-

sion, as well as his checking and savings accounts.

The court also ordered Gregory Lynch to maintain his present life and health insurance programs for the benefit of Anne Lynch and to assume $17,090 of marital debts, including a $5,144.26 obligation to the University of Minnesota Hospital.

## ISSUES

1. Did the trial court abuse its discretion in awarding permanent spousal maintenance of $2,500 per month?

2. Did the trial court err in its calculation and allocation of marital property and debt?

## ANALYSIS

### I

Gregory Lynch claims eight separate instances of the trial court's abuse of discretion in its award of permanent spousal maintenance.

■ Although he does not dispute the propriety of permanent maintenance, he contends the trial court abused its discretion by not retaining jurisdiction until the court can better determine Anne Lynch's prospects for rehabilitation and future employment. The trial court had sufficient facts before it to determine with relative certainty Anne Lynch's need for permanent maintenance. She has no independent source of income. She is unemployed and will likely remain so because of her age, physical condition and employment experience. Her chronic and acute medical problems offer no present prognosis for recovery. The evidence supporting permanent maintenance is substantial. If future circumstances warrant modification, a motion may be brought whether or not the decree specifically provides for it. Minn.Stat. § 518.64 (1986).

■ Similarly, the trial court did not err in refusing to order a modification of maintenance when the parties become eligible for social security benefits. While it is within the trial court's discretion to consider social security benefits, "failure to do so

[is] not an abuse of discretion." *Swanstrom v. Swanstrom*, 359 N.W.2d 634, 639 (Minn.Ct.App.1984).

■ Gregory Lynch contends the court erred in determining his net income. It was difficult for the trial court to determine a precise annual income figure because of fluctuating expense and tax adjustments which affect an estimation of Lynch's foreign employment. The certified accountant/lawyer who had prepared the Lynch's tax statements for several years testified that Lynch's 1985 after-tax income was $58,040. The accountant estimated that with $2,500 monthly maintenance payments, Lynch's 1986 after-tax income would increase to $66,025, or $5,502 per month. Gregory Lynch's own estimate was slightly lower—$63,000, or $5,250 net per month. The trial court did not err in accepting Lynch's 1986 estimate rather than adopting a 1985 figure.

■ The net income figure appears to be computed without considering Lynch's annual bonus payments. However, even if the bonuses had been computed into the estimate, it would not be error. Bonuses which provide a dependable source of income may properly be included in calculation of future income. *See Haasken v. Haasken*, 396 N.W.2d 253, 261 (Minn.Ct. App.1986).

■ The last three claims of error relate to standard of living, determination of expenses, and percentage of income required to pay maintenance. This court has not established any percentage guidelines determining the level of maintenance. Each case must be decided on its own facts. *Fink v. Fink*, 366 N.W.2d 340, 341–42 (Minn.Ct.App.1985). The standard of living during the marriage is a consideration required by the statute. The trial court calculated the living expenses of both Gregory and Anne Lynch, and the calculation, as well as the evaluation of the standard of living, is supported by the evidence. We do not find error in the court's calculation or abuse of discretion in the award of $2,500 per month maintenance.

## II

■ A trial court's division of marital property need not be mathematically equal; it need only be just and equitable. *Ruzic v. Ruzic*, 281 N.W.2d 502 (Minn.1979); *Johns v. Johns*, 354 N.W.2d 564, 566 (Minn.Ct. App.1984). In determining a just and equitable property division, the court should consider "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and the income of each party." Minn.Stat. § 518.58 (1986).

■ Gregory Lynch charges that it was error for the trial court to credit him with a $25,000 cash advance based on his dissipation of marital assets. All assets in existence at dissolution are marital assets subject to equitable division between the parties. *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983). Gregory Lynch used the money at his own discretion and it is assignable to him as a distribution. *See Bollenbach v. Bollenbach*, 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970). It was within the trial court's discretion to apportion to Gregory Lynch marital assets dissipated by him, as well as to require a $10,000 cash equalization payment.

■ Gregory Lynch also challenges the trial court's apportionment of debt. In dissolution actions, debts are apportioned as part of the property settlement and are treated in the same manner as the division of assets. *See Justis v. Justis*, 384 N.W.2d 885, 889 (Minn.Ct.App.1986). A party may be held liable for marital debts even though the other party receives the benefit of payment. *Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn.Ct.App.1984). It is within the trial court's discretion to require Gregory Lynch to pay $22,234.26 in family debts in its property division.

Gregory Lynch also charges that the mathematical total of the property award in the trial court's amended order is in error. He is correct in this assertion. The trial court's schedule of marital property award should show a total property award of $37,948 to Anne Lynch and $35,702.09 to Gregory Lynch. The case should be re-

manded for the trial court to correct the error. However, the individual distributions remain the same.

■ Finally, Gregory Lynch claims error in the court's evidentiary rulings. Trial procedure or evidentiary rulings are subject to appellate review only if there has been a motion for a new trial in which the matters have been assigned as error. *Tasker v. Tasker,* 395 N.W.2d 100, 103 (Minn.Ct.App.1986). Since there was no motion for a new trial, these assignments of error are not now properly before this court.

## DECISION

Affirmed and remanded for correction of judgment.