**In re the Marriage of Madonna F. RASK, Petitioner, Respondent,**

v.

**Donald C. RASK, Appellant.**

**No. CX–89–387.**

Court of Appeals of Minnesota.

Sept. 26, 1989.

Ragnhild Anne Westby, St. Paul, for appellant.

Dianne Wright, Janecek & Wright, New Brighton, for respondent.

Heard, considered, and decided by FOLEY, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

RANDALL, Judge.

This is an appeal from the trial court's marital property division, spousal maintenance and attorney fees awards. We affirm the trial court's marital property division and attorney fees award, but reverse and remand on the spousal maintenance issue.

## FACTS

Appellant Donald C. Rask and respondent Madonna F. Rask were married on

September 24, 1960. During the marriage, the parties had three children; none of the children are now minors. Respondent's role during the marriage was primarily that of homemaker and mother. Appellant worked outside of the home throughout the marriage and assumed primary responsibility for the family's financial well-being. At the time of trial, respondent was 48 years old and appellant was 50 years old.

Respondent had not been employed outside of the home before this action began. She is a high school graduate with no additional vocational training. Expert testimony revealed that respondent is not a good candidate for vocational rehabilitation, and that her employment opportunities are limited. Since June 15, 1987, respondent has been employed as a cashier at a liquor store. She is paid $6.25 per hour. The trial court found that respondent's net monthly income is $934.

Appellant is an employee of Northern States Power Company (NSP), where he has worked for the past 24 years. His current job title is lead engineer. The trial court, based on appellant's earnings history,[1] found appellant's projected gross income for 1988 to be $69,458, and his average net monthly income $3699.

In addition to his salary, appellant has a defined benefit plan. Under the terms of the plan, NSP agrees to make monthly payments to appellant upon retirement. The amount of the payment depends upon appellant's average earnings for the four years prior to his retirement. Before trial, appellant stated in an affidavit that he would retire at age 58. At trial, appellant first testified that he did not know when he would retire. Later in the trial, appellant testified that he would retire at age 65. Based on this testimony, the trial court concluded that a reasonable valuation of appellant's defined benefit plan was impos-

sible, and divided the marital portion of the plan equally.

Prior to trial, respondent brought two motions before a family court referee seeking temporary support and attorney fees. At the first hearing on July 13, 1987, respondent claimed monthly expenses of approximately $1465. The referee awarded respondent exclusive use of the parties' homestead and household goods. The referee also permitted respondent to withdraw $600 from the parties' joint bank account to pay attorney fees and costs. The referee further ordered appellant to pay $250 per month to respondent as temporary spousal maintenance.

On June 28, 1988, respondent filed a second application for temporary relief, seeking a modification of the spousal maintenance award from $250 to $1200 per month. In support of her request, respondent claimed monthly expenses of $1,971.55. Respondent also sought $8000 in attorney fees and costs. The referee refused to amend the spousal maintenance award, reserved the issue of attorney fees, and allowed respondent to withdraw $1500 from the parties' joint savings account to pay for trial preparation expenses.

On August 4, 1988, respondent filed notice of review of the referee's decision with the trial court. The court deferred review of the referee's decision until trial. However, prior to trial, the court issued an order permitting respondent to withdraw $5000 from the parties' joint savings account for attorney fees and costs.

At trial, the parties once again submitted estimates of their current monthly needs. The trial court found that respondent's expenses are $2245 per month and appellant's are $1955. Based on these expenses and the income tax consequences of payment and receipt of spousal maintenance, the trial court ordered appellant to pay $2000 per month permanent spousal mainte-

---

1. Appellant's gross income for each of the five years prior to 1988 was:

| 1987 | $65,177.60 |
| 1986 | 56,245.14 |
| 1985 | $55,653.35 |
| 1984 | 49,247.80 |
| 1983 | 41,709.50 |

nance.[2]

The trial court divided the parties' marital assets equally. The parties agreed to sell the marital home and divide the proceeds after deducting the costs of the sale. The trial court ordered appellant to pay $10,000 in attorney fees from his share of the proceeds. The trial court based this award partly on its conclusion that appellant maintained legal positions contrary to settled law. The court also found appellant had refused to cooperate in discovery, and evidenced an unwillingness to exchange information or provide his witness list until two days before trial. An additional justification for the award was the disparity in the parties' earning capacity.

## ISSUES

1. Did the trial court abuse its discretion by dividing the marital portion of appellant's defined benefit plan equally between the parties?

2. Did the trial court abuse its discretion by awarding respondent $2000 per month in permanent spousal maintenance?

3. Did the trial court abuse its discretion by awarding attorney fees to respondent?

## ANALYSIS

### I.

*Defined Benefit Plan*

Appellant argues that the trial court abused its discretion by dividing the marital portion of the defined benefit plan equally between the parties. He claims the trial court was required to award the pension to him and offset this with an award of assets of equivalent value to respondent

pursuant to Minn.Stat. § 518.58, subd. 3(a) (1988).[3] The trial court concluded it could not reasonably value the pension because "no credible evidence was presented by which the court could ascertain respondent's likely retirement date." Therefore, the court found it impossible to offset an award of the pension to appellant with an award of equivalent value to respondent.

We find no abuse of discretion in the trial court's ruling. *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn.1983) (valuation and division of pension rights is a matter for the trial court's discretion). The supreme court has expressed a preference for dividing a pension at the time of trial "where testimony on valuation is not unduly speculative." *Id.* at 798–99. However, when the evidence does not support a correct calculation of value, the trial court may divide the pension by awarding each of the parties a fixed percentage of the benefit. *Kottke v. Kottke*, 353 N.W.2d 633, 637 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Dec. 20, 1984).

Here, the trial court found that it could not reasonably assign a value to appellant's pension due to uncertainty surrounding his plans for retirement. The record supports this finding. Appellant gave conflicting testimony concerning his intended retirement date. Based on this testimony, the trial court awarded respondent one-half of the marital interest in the defined benefit plan. The trial court ordered respondent's counsel to submit a Qualified Domestic Relations Order (QDRO) to NSP to effectuate the award. This court recently approved of the use of a QDRO when problems are posed by the valuation of a pension. *See Fastner v. Fastner*, 427 N.W.2d 691, 698 (Minn.Ct.

---

**2.** The trial court also amended the referee's order awarding $250 in temporary spousal maintenance. The trial court concluded that at the time the motion to modify the temporary maintenance award was made, respondent was entitled to $1200 per month.

**3.** Minn.Stat. § 518.58, subd. 3(a) (1988) provides in part:

> If liquid or readily liquidated marital property other than property representing vested pension benefits or rights is available, the court, so far as possible, shall divide the property representing vested pension benefits or rights by the disposition of an equivalent amount of the liquid or readily liquidated property.

App.1988) (use of a QDRO is within trial court's discretion). Thus, we affirm the trial court's decision to divide appellant's pension pursuant to a QDRO.

## II.

*Spousal Maintenance*

Appellant contends the trial court abused its discretion by awarding respondent $2000 per month permanent spousal maintenance. Appellant argues the trial court failed to fully consider respondent's financial resources, including the marital property award, when setting the amount of permanent maintenance as required by Minn. Stat. § 518.552, subd. 2(a) (1988).[4] Appellant also claims the trial court erroneously included a speculative mortgage payment in respondent's monthly expenses and overestimated his ability to pay. *See id.* at subd. 2(g).[5]

We review a trial court's award of spousal maintenance under an abuse of discretion standard. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). The trial court's decision must be examined in light of the factors set forth in Minn.Stat. § 518.552, subd. 2. *Id.* No single statutory factor is controlling and each case must be determined on its own facts. *Id.* at 39.

■ Based on our review of the record, we hold that the award of $2000 per month in permanent spousal maintenance is excessive. We agree with appellant's claim that the trial court failed to consider respondent's financial resources in light of the marital property award as required by Minn.Stat. § 518.552, subd. 2(a). Respon-

dent received marital property worth $55,-056 from the trial court. In addition to this amount, respondent will receive one-half of the proceeds from the sale of the parties' $100,000 to $110,000 home. Respondent will also receive one-half of the marital portion of appellant's defined benefit plan. The trial court correctly found that the value of this plan cannot be determined due to uncertainty surrounding appellant's retirement date. However, expert testimony introduced at trial places the value of the pension between $39,000 and $118,000. Thus, the total value of respondent's marital property award will range from a low of approximately $125,000 to a high of approximately $169,000. The trial court made no mention of this award when setting the amount of permanent maintenance.

The trial court concentrated on the maximum amount it determined appellant could afford to pay respondent and still meet his basic needs. The supreme court recently stated, "[a] spouse's ability to pay maintenance does not * * * obviate the statutory mandate that the other spouse's own independent financial resources must be considered too." *Lyon v. Lyon,* 439 N.W.2d 18, 22 (Minn.1989). We realize that the amount of marital property involved here does not approach the amount involved in *Lyon.* Nevertheless, the principal enunciated in *Lyon* applies here.

Respondent testified that she intends to use $50,000 of the marital property award as a downpayment on a new home. Deducting this amount from her total award leaves respondent with between $75,000 and $119,000. Either of these amounts, prudently invested, will yield substantial

---

4. Minn.Stat. § 518.552, subd. 2(a) (1988) provides:

Subd. 2 The maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including

the extent to which a provision for support of a child living with the party includes a sum for that party as custodian[.]

5. Minn.Stat. § 518.552, subd. 2(g) (1988) provides that one factor to be considered when awarding maintenance is:

the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance[.]

interest income to respondent. *See, e.g., Fink v. Fink*, 366 N.W.2d 340, 342 (Minn. Ct.App.1985) (court should take interest income which may be generated from marital property award into account when calculating spousal maintenance). This interest income, when combined with respondent's wages and a proper amount of spousal maintenance, will enable respondent to live comfortably.

■ We also agree with appellant's claim that the trial court erroneously included a $610 mortgage payment in respondent's reasonable monthly needs. Respondent testified that she is not currently paying that amount, had not purchased a home, but merely "estimated" that a $610 monthly payment would be required to purchase the type of home she wants, assuming she put $50,000 down. There is no evidence in the record concerning when respondent will begin incurring this expense, or whether she ever will. Respondent reserves every right to change her mind about whether she will buy a home or rent, and about what price she will pay for housing.

A trial court's calculation of living expenses must be supported by the evidence. *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987). Since there is no evidence in this record concerning when or whether respondent will begin incurring the mortgage expense, we hold that the trial court erred by including this amount as part of respondent's monthly needs. *See Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984) (conclusion that is against logic and facts on the record constitutes an abuse of discretion). As the record re-

flects, respondent's temporary spousal maintenance was raised from $250 to $1200 a month, and nothing has basically changed relative to respondent's living expenses since the award of $1200 a month was found reasonable.

■ Finally, we are persuaded by appellant's claim that the trial court overestimated his ability to pay spousal maintenance. The award of $2000 per month in spousal maintenance consumes 54% of appellant's net monthly income. We are unaware of any appellate cases affirming such a high award absent unusual circumstances such as an obligor's extremely high income or an obligee's physical or mental infirmity.[6] Neither situation is present here.

We have reversed spousal maintenance awards when, based on an analysis of the obligor's net income, we concluded the amount of the award was unreasonably high. *E.g., Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 26, 1985). In *Kostelnik*, the amount awarded was $1800 per month or $21,600 per year. The obligor's net income was $34,000 to $35,000. We held that the maintenance award was unreasonably high when measured against the obligor's net income. Here, the obligor's net annual income is $44,400 and his annual spousal maintenance obligation is $24,000. Based on *Kostelnik*, we find this amount unreasonably high.

Because we conclude the trial court failed to consider the marital property award, improperly included a projected mortgage payment in respondent's expenses, and overestimated appellant's ability to pay support when setting the amount of the maintenance award, we reverse the

6. *See e.g., Arundel v. Arundel*, 281 N.W.2d 663, 665 (Minn.1979) ($2000 per month spousal maintenance award upheld where obligor's gross income prior to the divorce ranged from $91,000 to $108,000 and obligee had health problems); *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. October 30, 1987) ($2500 per month maintenance payments upheld where obligor's net income was approximately $5250 per month

and obligee had substantial medical problems); *Lunde v. Lunde*, 408 N.W.2d 888, 892 (Minn.Ct. App.1987) (award of $1875 per month in spousal maintenance upheld in light of obligor's gross monthly income of $27,754); *Flynn v. Flynn*, 402 N.W.2d 111, 115–16 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 24, 1987) ($4500 monthly maintenance award upheld where obligor's net annual income was approximately $122,200).

trial court's ruling and remand this issue to the trial court. On remand, the trial court should redetermine respondent's net monthly income, taking into account the interest income respondent will earn from her share of the marital property award. We note that the $1200 per month temporary maintenance award granted by the trial court based on respondent's claimed expenses of $1971.55 appears from the record to have been within the permissible range.

## III.

*Attorney fees*

The trial court awarded respondent $13,650 in attorney fees over the course of this proceeding based in part on Minn.Stat. § 518.14 (1988).[7] The trial court ruled that the fee award was justified both by the disparity in the parties' earnings and appellant's insistence on maintaining legal positions contrary to well-settled law.

A trial court has broad discretion to award attorney fees in dissolution proceedings. Absent a clear abuse of discretion, a trial court's decision will not be disturbed. *Borchert v. Borchert,* 279 Minn. 16, 21, 154 N.W.2d 902, 906 (1967). In addition to financial resources, a trial court may award fees "based on the impact a party's behavior had on the cost of litigation." *Holder v. Holder,* 403 N.W.2d 269, 271 (Minn.Ct. App.1987).

Appellant claims the trial court abused its discretion by awarding respondent $13,650 in attorney fees. Our review of the record reveals no *clear* abuse of discretion. *Borchert,* 279 Minn. at 21, 154 N.W.2d at 906 (emphasis added).

■ The trial court found appellant took legal positions contrary to well-settled law

and refused to cooperate in discovery. This behavior, according to the trial court, provided a basis for respondent's attorney fee award. The trial court failed to explain what unfounded legal position appellant maintained at trial. Our review of the record reveals none. Respondent claims appellant's opposition to an award of permanent maintenance constitutes an unfounded position. We reject this claim. The question of lengthy temporary versus permanent maintenance was close and was a trial court's discretionary call, but the record reveals no reason why appellant could not argue for temporary maintenance. There is some support in the record for the trial court's finding that appellant refused to cooperate in discovery. *See Burton v. Burton,* 365 N.W.2d 310, 312 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985) (obstruction of discovery may justify an award of attorney fees). Although the amount of attorney fees awarded is high, we affirm the trial court's attorney fee award as being within the permissible bounds of discretion.

## DECISION

The trial court did not err by dividing the marital portion of appellant's defined benefit plan equally between the parties. The $2000 per month permanent spousal maintenance award is reversed and remanded to the trial court for further consideration. The trial court's attorney fees award does not constitute a clear abuse of discretion.

Affirmed in part, reversed in part and remanded.

---

7. Minn.Stat. § 518.14 (1988) provides in part:
   In a proceeding brought either for dissolution or legal separation under this chapter, the court, from time to time, after considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement or after entry of judgment.