*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0184**

In re the Marriage of:
Sharon Alice Gribble, petitioner,
Respondent,

vs.

William Daniel Gribble,
Appellant.

**Filed June 15, 2015
Affirmed in part, reversed in part, and remanded
Smith, Judge**

Ramsey County District Court
File No. 62-FA-12-76

Patricia A. O'Gorman, Patricia A. O'Gorman, P.A., Cottage Grove, Minnesota (for respondent)

Karen T. Kugler, J. Oakes Family Law, Roseville, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm in part because the district court did not clearly err by finding that respondent was not voluntarily underemployed, when calculating appellant's and respondent's reasonable monthly expenses, or when considering respondent's ability to

become self-supporting. The district court did not abuse its discretion by ordering appellant to maintain his $1,000,000 life insurance policy. The district court did not clearly err by finding that appellant had sufficient assets to pay appellant's need-based attorney fees. However, we reverse in part and remand for additional findings regarding the amount of and basis for the district court's consideration of the parties' tax liabilities, respondent's ability to pay the spousal-maintenance award in light of the district court's implicit consideration of income and expenses beyond those it relied upon for its calculation of the parties' monthly expenses, and whether the district court's spousal-maintenance award of 50% of appellant's annual bonus results in an award that exceeds respondent's need.

## FACTS

Appellant William Gribble and respondent Sharon Gribble divorced in June 2013 after an approximately 15-year marriage. At the time of their divorce, the parties had four minor children.

The district court found that Sharon earned $12.45 an hour as a part-time school paraprofessional, but that she hoped to secure a full-time position at the same rate of pay shortly after the dissolution. It determined that her job employed her for 178 days per year, resulting in an average gross monthly income of $1,154. It found that her "marketable job skills are nominal" and that "her skills have become outmoded." Because "[s]he lacks education, skills, and experience that would allow her to find immediate employment," and because "[i]t is uncertain how much time [she] would need to acquire sufficient education or training to find appropriate employment," the district

2

court found that "her earning capacity has become permanently diminished." It also determined that she "is neither voluntarily underemployed nor self-limiting her income." The district court found that Sharon had reasonable monthly expenses of $6,988, not including possible medical-insurance, educational, pension-fund, and attorney-fees expenses. Based on these findings, it concluded that she "is unable to provide adequate self-support after considering the standard of living established during the marriage through appropriate employment."

The district court found that William had a gross monthly salary of $12,555, supplemented by a variable yearly bonus averaging $33,762. It determined that his monthly living expenses were "speculative, as he currently resides temporarily in his mother's basement," but it "estimated" them to be $3,313, not counting pension-fund contributions, debt payments, or attorney fees. Its findings also did not include any expense for a car payment that the record shows he makes each month.

Based on its findings regarding the parties' income and expenses, the district court awarded Sharon $4,434 per month in permanent spousal maintenance, plus "50% of [William's] annual bonus up to a maximum of $18,792, which is an average of $1,566 per month." It also ordered William to pay a net child support obligation of $2,046 per month, instructed him to maintain a $1,000,000 life insurance policy "naming [Sharon] as the beneficiary, for as long as [William] has a child-support obligation," and directed him to contribute $20,000 toward Sharon's attorney fees and litigation costs.

Both parties moved the district court for amended findings. The district court reduced William's net child-support obligation to $1,886, and reduced its attorney-fees

3

award to $10,000. When addressing William's motion for the district court to amend its finding that he had the ability to meet his own monthly expenses while contributing to Sharon's, the district court detailed cash-flow calculations for both parties. In the course of these calculations, the district court mentioned several expenses not contained in its previous findings of income and expenses for the parties, including 7% pension-fund contributions for both parties, expected tax liabilities for both parties, and William's $9,750 car allowance. Based on its calculations, it found that the effect of its orders was that "83% of the family ([Sharon] and four children) will have 69% of the available cash flow, and 17% ([William]) will have 31% of the available cash flow." It rejected William's arguments that Sharon could increase her income by obtaining additional education and training as "unrealistic and unpersuasive."

## D E C I S I O N

### I.

William challenges the district court's calculation of Sharon's income predicate to its child-support award, arguing that it failed to impute income to her as a result of her being voluntarily underemployed. If a parent is voluntarily underemployed, the district court must calculate child support "based on a determination of potential income." Minn. Stat. § 518A.32, subd. 1 (2014). Although the statute does not define voluntary underemployment, the key inquiry is whether a parent has chosen to limit her income. *See Franzen v. Borders*, 521 N.W.2d 626, 629 (Minn. App. 1994) ("[I]mputation of income . . . is appropriate if the support obligor *chose* to be unemployed or underemployed and neither statutory condition applies." (emphasis added)). "Whether a

4

parent is voluntarily underemployed is a finding of fact, which we review for clear error." *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009). A district court's finding is clearly erroneous only if, after viewing the record in a light most favorable to the district court's finding, we are "left with the definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000) (quotation omitted). The fact that the record might support other findings does not by itself render a finding clearly erroneous. *Id.* at 474.

Here, the district court found that Sharon was not voluntarily underemployed, citing her limited and outdated work experience and the uncertainty surrounding any efforts to obtain new education and skills. William contends that the district court should have considered the statutory factors for determining whether Sharon qualified as a caretaker. *See* Minn. Stat. § 518A.32, subd. 5 (2014). But a district court's consideration of the caretaker factors is a discretionary option for finding that a parent is not voluntarily underemployed; it is not a mandatory prerequisite to such a finding. *See id.* (stating that a district court "*may* consider the following factors when determining whether the parent is voluntarily . . . underemployed" (emphasis added)). Here, the district court focused upon Sharon's lack of up-to-date skills, not any caretaker status. William's reliance on Minn. Stat. § 518A.32, subd. 5 is therefore incorrect.

William also argues that the district court should have calculated Sharon's income for its child-support award based on the assumption that an hourly school employee "works 5 days a week, for 4.33 weeks per month, for 9 months per year, . . . result[ing] in approximately 195 days," instead of the 178 days that the district court used. But

5

William offers no evidence that the district court's estimation of the number of days in a school year was erroneous. To the contrary, any school-year calendar contains holidays and service days that would subtract from William's estimation. *See Hesse v. Hesse*, 778 N.W.2d 98, 103 (Minn. App. 2009) ("A court may take judicial notice of the course of the calendar." (citing *Webb v. Kennedy*, 20 Minn. 419, 420, 20 Gil. 374, 376 (1874)). We therefore conclude that the district court did not clearly err in finding that Sharon was not voluntarily underemployed.

## II.

William challenges several aspects of the district court's permanent spousal-maintenance award,[1] alleging numerous errors in its calculations of Sharon's and William's income and expenses. A district court has "wide discretion" in setting a spousal-maintenance award, and its determination "is final" absent an abuse of that discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). "A district court abuses its discretion when it makes findings unsupported by the evidence or when it improperly applies the law." *Hemmingsen v. Hemmingsen*, 767 N.W.2d 711, 716 (Minn. App. 2009), *appeal dismissed* (Minn. Feb. 1, 2010). "Findings of fact concerning spousal maintenance must be upheld unless they are clearly erroneous." *Gessner v. Gessner,* 487

---

[1] William also challenges the district court's differing calculation of his monthly expenses in its "cash-flow analysis" when addressing his motion for amended findings. Because we are unsure whether the district court's cash-flow analysis represents amended findings about William's income and reasonable expenses, or whether it is merely an illustration regarding William's ability to pay the spousal-maintenance award, we address that issue separately and focus here solely on William's challenge to the district court's calculation of the parties' reasonable monthly expenses in its original spousal-maintenance award.

N.W.2d 921, 923 (Minn. App. 1992). A factual finding is clearly erroneous only if it is "against logic and the facts on record," *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn. 2002), leaving us with a "definite and firm conviction that a mistake has been made." *Vangsness*, 607 N.W.2d at 472.

William argues that the district court's findings regarding his and Sharon's monthly expenses are unsupported by evidence. "A [district] court's calculation of living expenses must be supported by the evidence." *Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989). But factual findings regarding monthly expenses in a spousal-maintenance calculation "must be upheld unless clearly erroneous." *McCulloch v. McCulloch*, 435 N.W.2d 564, 566 (Minn. App. 1989).

William contends that the district court's expense calculations are contrary to logic and unsupported by evidence because it included a post-marital gym membership in Sharon's expenses, used a higher amount for Sharon's housing expense than for William's, failed to include his expenses for maintaining life-insurance and health-insurance policies, assumed higher childcare, life-insurance, and lawncare expenses for Sharon than for William, and failed to consider William's attorney-fees expenses in spite of awarding Sharon need-based attorney fees. Other than regarding the gym membership, William cites no authority nor does the record support his arguments that the discrepancies he claims amount to clearly erroneous findings.[2] We therefore decline

---

[2] We note in passing, however, that the district court's calculation of William's mortgage expense exceeded his own projections, and that the fact that the district court was not required to consider *any* mortgage payment for William when he did not presently have any mortgage expense, *see Rask*, 445 N.W.2d at 854, amply demonstrates that William

to consider those arguments.  *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971) (holding that "[a]n assignment of error based on mere assertion and not supported by any argument or authority" is waived "unless prejudicial error is obvious on mere inspection").

Regarding the gym membership, Williams cites *Kemp v. Kemp*, 608 N.W.2d 916, 921 (Minn. App. 2000), to support his argument that the district court clearly erred by including a $50 gym membership in Sharon's monthly expenses because the expense arose after the parties separated.  But *Kemp* contains no holding limiting claimed expenses to the pre-separation period.  To the contrary, a district court may consider expenses derived solely from the post-separation period, provided that it finds them to be a credible reflection of the overall standard of living that the parties enjoyed during the marriage.  *Melius v. Melius*, 765 N.W.2d 411, 417 (Minn. App. 2009).  Here, the district court implicitly found that the gym membership reflected the overall standard of living enjoyed by the parties during the marriage, and William proffers no evidence that the gym-membership expense is extravagant or reflective of a higher standard of living than that which the district court characterized as "a middle class standard of living."  We therefore conclude that the district court did not clearly err by including the gym membership in Sharon's reasonable monthly expenses.

---

was not prejudiced by any error in the district court's projection of his mortgage expense. We also note that the district court's life-insurance and health-insurance expense calculations were precisely what each party requested.

**III.**

William challenges the district court's calculation of Sharon's need and its award of permanent spousal maintenance, arguing that it failed to adequately consider Sharon's ability to become self-supporting. A district court's broad discretion to award spousal maintenance applies to both the amount and the duration of maintenance. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009). We review its factual determinations underlying its spousal-maintenance award only for clear error. *Id.*

William points to Sharon's statements indicating that she intended to seek additional education, arguing that the district court erred by dismissing those statements without "stat[ing] with any specificity the basis for these conclusions." He further argues that the district court's adoption of Sharon's proposed findings provides additional evidence that the district court failed to adequately consider her ability to become self-supporting, and he cites *Passolt v. Passolt*, 804 N.W.2d 18, 25 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011), to suggest that step-decreases in her spousal-maintenance award would have been a better way to incentivize her to become self-supporting.

William reads *Passolt* too broadly. In *Passolt*, we held that a district court must consider a maintenance recipient's ability to become self-supporting through education or retraining even in the absence of a finding that the maintenance recipient had "decreased his or her income in bad faith." *Id.* *Passolt* held, however, only that a district court errs by failing to consider the issue, *id.*; it does not require that a district court adopt the step-decrease approach based on any possibility that a recipient could become self-supporting through education or retraining. To the contrary, *Passolt* cites *Fredericksen v.*

9

*Fredericksen*, where we held that a district court's adoption of a step-decrease to account for a maintenance recipient's predicted receipt of social security payments was "too speculative" and "premature" because of "the uncertainties in the benefits she will receive." 368 N.W.2d 769, 776 (Minn. App. 1985).

The district court here found that Sharon's earning capacity had become "permanently diminished" because her work skills were outdated. It also found that any prospect for her becoming self-sufficient through education was "uncertain," and that William's predictions were "unrealistic and unpersuasive." Although Sharon's desire to pursue further education might have led the district court to a different conclusion, it did not compel a different conclusion. *See Vangsness*, 607 N.W.2d at 474 (noting that the fact that the record might support other findings does not by itself render a finding clearly erroneous). To the contrary, when it is "uncertain" whether a spouse seeking maintenance can eventually become self-supporting, the district court should award permanent spousal maintenance, leaving open the possibility that the obligor could bring a motion to modify maintenance if the recipient becomes self-supporting. *Nardini v. Nardini*, 414 N.W.2d 184, 198 (Minn. 1987).

William contends, however, that the district court's near-verbatim adoption of Sharon's proposed findings raises doubt about whether it adequately considered its findings. Although "wholesale adoption of one party's findings and conclusions raises the question of whether the [district] court independently evaluated each party's testimony and evidence," *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn. App. 1992), *review denied* (Minn. Feb. 12, 1993), such adoption of findings does not alter our clear-error

10

standard of review or compel reversal in itself, *Schallinger v. Schallinger*, 699 N.W.2d 15, 23 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005). Since the district court's findings regarding the uncertainty of Sharon's ability to become self-supporting are not clearly erroneous, we conclude that the district court did not abuse its discretion by failing to adequately consider the potential for Sharon to become self-supporting.

**IV.**

William challenges the district court's mandate that he maintain a $1,000,000 life-insurance policy to secure his child-support obligation, arguing that the required amount is excessive. A district court has discretion to order a child-support obligor to secure his child-support obligation with a life-insurance policy. *Emerick ex rel. Howley v. Sanchez*, 547 N.W.2d 109, 112 (Minn. App. 1996) (citing Minn. Stat. § 518.64); *see also* Minn. Stat. § 518A.71 (2014) (allowing a district court to require "sufficient security" for maintenance or support payments). An insurance requirement should be supported by factual findings regarding the obligor's insurability and the cost of insurance. *Lee v. Lee*, 775 N.W.2d 631, 642-43 (Minn. 2009).

Here, the district court's insurance requirement was based on William's existing policy and its existing cost. This amounts to an implicit finding that William is insurable and that the cost of that insurance is $70 per month, and these findings are not clearly erroneous. *See Prahl v. Prahl*, 627 N.W.2d 698, 703 (Minn. App. 2001) (noting that a district court's compliance with factual-findings requirements can be implicit). William offers no argument or authority requiring the district court to reduce a party's insurance

11

obligation below what it has already maintained and claimed as an expense. We therefore affirm the district court's life-insurance requirement.

**V.**

William challenges the district court's award of attorney fees to Sharon, arguing that its conduct-based justifications were based on facts outside the record and that its failure to differentiate need- from conduct-based awards requires remand. "An award of attorney fees in dissolution cases rests almost entirely within the discretion of the [district] court and will not be disturbed absent a clear abuse of discretion." *Jensen v. Jensen*, 409 N.W.2d 60, 63 (Minn. App. 1987). A district court shall award need-based attorney fees in a dissolution proceeding when it finds that the recipient needs the award "for the good faith assertion of [her] rights," that the party paying has the means to pay them, and that the recipient does not have the means to pay them. Minn. Stat. § 518.14, subd. 1 (2014). The district court may also award conduct-based attorney fees to a party when another party "unreasonably contributes to the length and expense of the proceeding." *Id.*

We need not decide William's challenge to the district court's conduct-based justification for its attorney-fees award because its need-based findings are sufficient to support the entire award. *Cf. Haefele v. Haefele*, 621 N.W.2d 758, 767 (Minn. App. 2001) (noting that remand is necessary when "[w]e cannot discern . . . what portion of the entire award is attributable to need-based fees"), *review denied* (Minn. Feb. 21, 2001). The district court found that Sharon had accrued significant credit card debt to pay her attorney fees and that she lacked the ability to pay that debt. It also noted that William

12

retained $30,000 from an annual bonus, and that he therefore had the ability to pay $10,000 towards Sharon's attorney fees. William does not contend that these findings are clearly erroneous. Since the district court's findings fulfill the statutory requirements for an award of need-based attorney fees, the district court did not abuse its discretion by ordering William to pay $10,000 towards Sharon's attorney fees.

## VI.

William challenges the district court's order on his motion for amended findings regarding his ability to pay spousal maintenance, arguing that the district court erred by considering tax consequences without specifying a basis and by exaggerating his income. When setting a spousal-maintenance award, a district court must consider "the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance." Minn. Stat. § 518.552, subd. 2(g) (2014). We review a district court's factual findings for clear error. *Maiers*, 775 N.W.2d at 668.

A district court has discretion to consider tax consequences as part of its spousal-maintenance-award calculations, provided that it has a "reasonable and supportable basis for making an informed judgment as to [the] probable liability." *Kampf v. Kampf*, 732 N.W.2d 630, 634-35 (Minn. App. 2007) (alteration in original) (quotation omitted)), *review denied* (Minn. Aug. 21, 2007). But a district court "should not speculate about possible tax consequences" and must instead have "sufficient information that the actual tax liability . . . can be calculated with a reasonable degree of certainty." *Miller v. Miller*, 352 N.W.2d 738, 744 (Minn. 1984).

Here, the district court order on William's motion for amended findings about Sharon's need included amounts for Sharon's and William's respective tax liabilities in its "cash-flow analysis." It found that, including spousal-maintenance and child-support payments, Sharon would receive $107,512 annually and incur a tax liability of $5,152. It also found that, after making spousal-maintenance and child-support payments, William would receive $79,945 annually and incur a tax liability of $35,658. The district court did not specify a basis for these amounts, and we are unable to discern the basis for them. The district court seems to have assumed that Sharon would incur a tax liability of less than 5% of gross income, but that William would incur a tax liability of over 44%. Since spousal-maintenance payments are taxable to the recipient, not the obligor, *see* 26 U.S.C. § 71(a) (2012), the district court appears to have significantly underestimated Sharon's tax liability. Accordingly, we reverse and remand for the district court to make amended findings regarding the parties' tax liabilities.

William also challenges the district court's calculation of his ability to meet his own needs while paying the spousal-maintenance award, arguing that the district court exaggerated William's income by counting as income a $9,750 annual car allowance without also counting his car payments as an expense. Although the district court specifically excluded William's $750 employer-provided car allowance in its finding that his income was $12,555 per month, when considering William's motion for amended findings, the court added $812.50 per month to his gross income for a car allowance. The district court did not add a car-payment to William's expenses when it added the car allowance to his income. As a consequence, the district court may have overestimated

14

William's net monthly cash flow, and thereby significantly exaggerated his ability to pay the spousal-maintenance award. Sharon concedes that the district court erred in this respect, but contends that the error is de minimus. Although we may eschew remanding for correction of de minimus errors, we cannot conclude that this error is de minimus. *Cf. Risk ex rel. Miller v. Stark*, 787 N.W.2d 690, 694 n.1 (Minn. App. 2010) (declining to remand to correct $400 typographical error on valuation of $99,900 farm), *review denied* (Minn. Nov. 16, 2010); *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand to correct "technical error"). We therefore direct that, on remand, the district court make further findings regarding William's ability to pay its spousal-maintenance award.

## VII.

William challenges the district court's award of 50% of his future bonuses as permanent spousal maintenance, arguing that the district court's order is ambiguous and results in a spousal-maintenance award that exceeds Sharon's need. "Bonuses which provide a dependable source of income may properly be included in calculation of future income." *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn. App. 1987), *review denied* (Minn. Oct. 30, 1987). A district court has discretion to include a percentage of future bonus income in its spousal-maintenance award. *See McCarthy v. McCarthy*, 301 Minn. 270, 272, 275, 222 N.W.2d 331, 334 (1974) (affirming spousal-maintenance award including a percentage of bonus income). But a district court's spousal-maintenance award should be based on meeting the recipient's needs and should not exceed the

amount necessary to that end. *See Lee*, 775 N.W.2d at 642 (remanding for reconsideration of maintenance award that exceeded recipient's needs).

William concedes that the inclusion of some percentage of his bonus income in the district court's spousal-maintenance award was within the district court's discretion, but he argues that the district court failed to specify whether the percentage would be based on his bonus amount before or after taxes were deducted. He also contends that the bonus portion of the spousal-maintenance award would exceed Sharon's reasonable monthly needs. The district court found that Sharon's and the children's combined reasonable monthly expenses were $6,988, not including medical insurance, educational expenses, debt payments, or pension contributions. Adding the district court's $525 estimate of the cost of Sharon's medical-insurance coverage,[3] this results in monthly expenses of $7,513. As for income, the district court found that Sharon earned an average monthly salary of $1,154 per month. In addition to 50% of William's annual bonus payments, it awarded Sharon $4,434 per month in permanent spousal maintenance and net child support of $1,886. This results in gross income from sources other than William's bonus to Sharon of $7,474, an amount very close to meeting Sharon's reasonable monthly expenses. An across-the-board addition of an annual-bonus spousal-maintenance award averaging $1,566 per month, results in gross income from all sources to Sharon of $9,040, significantly exceeding her reasonable expenses (including income

---

[3] The district court directed Sharon to bear the cost of her medical-insurance coverage, but it did not list this cost in her monthly expenses or in its cash-flow analysis for Sharon.

tax liability) as determined by the district court.[4]  We therefore direct the district court on remand to reconsider whether its award of 50% of William's annual bonus might result in a spousal-maintenance award in excess of Sharon's need and to adjust the award accordingly.  The district court should also specify whether the proportion of William's bonus that he is required to pay is based on the pre-tax or after-tax amount of the bonus. The district court should also address the tax implications to the parties of awarding part of any bonus as maintenance.  Whether to reopen the record or remand shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded.**

---

[4]  Although we undertake these calculations as part of our effort to discern the implications of the district court's need calculations, we note that the court of appeals does not find facts, *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966), and we direct that the district court on remand make its own appropriate factual findings and calculations as necessary to carry out its remand instructions. *See Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn. 2005) (noting that district courts enjoy "broad discretion" when determining how to proceed on remand).